**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

CARSHENA GARY, LORI SCHARFF,
REGINA ROOT, NAIM MUAWIA ABU-EL
HAWA, JOHN HALVERSON, THE
NATIONAL FEDERATION OF THE BLIND
OF VIRGINIA, and THE AMERICAN
COUNCIL OF THE BLIND
OF VIRGINIA,

      Plaintiffs,

   v.

VIRGINIA DEPARTMENT OF ELECTIONS,
CHRISTOPHER PIPER, Commissioner of the
Virginia Department of Election in his official
capacity, THE VIRGINIA BOARD OF
ELECTIONS, ROBERT H. BRINK, Chair of
the Virginia Board of Elections in his official
capacity, JOHN O' BANNON, Vice Chair the
Virginia Board of Election in his official
capacity, and JAMILAH D. LECRUISE,
Secretary of the Virginia Board of Elections, in
her official capacity,

      Defendants.

Case No.

**COMPLAINT FOR
DECLARATORY AND INJUCTIVE
RELIEF**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Virginia Code)

## INTRODUCTION

1.     The right to cast an unimpeded and private vote is a cornerstone of our democracy. That right is severely compromised for many eligible voters in Virginia who are blind, have low vision, or whose manual dexterity is impaired and who wish to vote absentee, as other Virginia voters can. Because the absentee ballot is provided only in hard copy and must be read in standard print and filled in by hand, these Virginia citizens are unable to cast their ballot privately and independently. Instead, they must reveal their choices to another person and hope that person correctly records their vote. Otherwise, they must risk COVID-19 infection by traveling to the polls to vote in person.

2.     Defendants, the Virginia Department of Elections, its Commissioner, Christopher E. Piper, the Virginia State Board of Elections, its Chairman, Robert H. Brink, its Vice Chair, John O'Bannon, and its Secretary, Jamilah D. LeCruise, are able, and are obligated, to remedy this inequality for the November 3, 2020 General Election.

3.     Remote accessible vote-by-mail ("RAVBM") tools are readily available to make Virginia's absentee ballots accessible. In fact, Defendants have secured a RAVBM system but refuse to make it available to voters with print disabilities. Many other states have implemented this technology and are providing accessible electronic ballots.

4.     The ability to vote absentee is particularly critical now. The impact of the novel coronavirus SARS-CoV-2 ("COVID-19") pandemic in the United States is being felt by Virginians in every sphere of life. Voting is no exception. In response to the pandemic, Virginia has encouraged its residents to vote by absentee ballot to prevent gathering at the polls. As Gov.

Ralph Northam urged, "Virginians should never have to choose between casting a ballot and risking their health."[1]

5.   Plaintiffs Carshena Gary, Lori Scharff, Regina Root, Naim Muawia Abu-El Hawa, and John Halverson (collectively "Plaintiffs"), and members of Plaintiff organizations The National Federation of the Blind of Virginia ("NFBV") and The American Counsel of the Blind of Virginia ("ACB-VA") are unable to independently mark a paper ballot due to their disabilities, including blindness, low vision, and physical disabilities that impair manual dexterity (collectively herein, "print disabilities").

6.   The Absentee Voting Program provides no alternatives to accommodate individuals with print disabilities to enable them to vote privately and independently. As a result, individuals with print disabilities must choose between their health and their right to vote because they are forced to go to their local electoral board or polling place to privately and independently mark their ballots.

7.   Defendants are aware of the need to make the Absentee Voting Program accessible and have not done so. Plaintiffs file this lawsuit to require Defendants to implement an accessible Absentee Voting Program for all Virginia voters with disabilities so that they may cast their ballots privately and independently in the upcoming General Election.

---

[1] Whittney Evans, *Lawsuit Tries to Stop Virginians From Using Coronavirus as Excuse to Vote Absentee*, Va.'s Home for Pub. Media (VPM) (May 21, 2020), https://vpm.org/news/articles/13610/lawsuit-tries-to-stop-virginians-from-using-coronavirus-as-excuse-to-vote; PBS NewsHour, Virginia Governor Ralph Northam Gives Coronavirus Update, YouTube (Apr. 24, 2020), https://www.youtube.com/watch?v=BQ-BX1fI-N0&t=320s.

## JURISDICTION AND VENUE

8.     Plaintiffs' federal claims are brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202.

11.     This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367, as the state claim arises from the same set of operative facts as Plaintiffs' federal claim.

12.     Venue is appropriate in the Eastern District of Virginia the pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions that gave rise to Plaintiffs' claims occurred within this District.

## PARTIES

13.     PLAINTIFF CARSHENA GARY is a blind individual who is registered to vote in Virginia and is a member of NFBV. She resides in Capron, Virginia, and wants to vote absentee privately and independently in the November General Election and future elections.

14.     PLAINTIFF LORI SCHARFF is a blind individual who is registered to vote in Virginia and is a member of ACB-VA. She resides in Waynesboro, Virginia, and wants to vote absentee privately and independently in the November General Election and future elections.

15.     PLAINTIFF REGINA ROOT, has a vision disability and manual dexterity impairment and is registered to vote in Virginia. She resides in Williamsburg, Virginia, and

wants to vote absentee privately and independently in the November General Election and future elections.

16.     PLAINTIFF NAIM MUAWIA ABU-EL HAWA is a blind individual who is registered to vote in Virginia. He resides in Vienna, Virginia, and wants to vote absentee privately and independently in the November General Election and future elections.

17.     PLAINTIFF JOHN HALVERSON is a blind individual who is registered to vote in Virginia. He resides in Arlington, Virginia, and wants to vote absentee privately and independently in the November General Election and future elections.

18.     PLAINTIFF NATIONAL FEDERATION OF THE BLIND OF VIRGINIA ("NFBV") is the Virginia affiliate of the National Federation of the Blind. NFBV is a 501(c)(3) non-profit corporation made up of blind Virginians, their families, and friends. NFBV brings this suit on behalf of its members.

19.     NFBV advances the National Federation of the Blind's goal of complete integration of the blind into society on a basis of equity. This objective involves the removal of legal, economic, and social barriers; the education of the public to new concepts concerning blindness; and the achievement by all blind people of the right to exercise to the fullest their individual talents and capabilities. It means the right of the blind to work along with their sighted neighbors in the professions, common callings, skilled trades, and regular occupations, and to participate in the organized civic and community activities of society on an equal basis. The NFBV works in furtherance of its members' right to participate fully and equally in all aspects of their lives in Virginia, including in voting.

20.     The NFBV is a membership organization with many blind and deaf-blind members, including Carshena Gary, Naim Muawia Abu-El Hawa, and John Halverson, who are

registered to vote in Virginia and wish to vote privately and independently, as their fellow Virginians may, in the upcoming November 3, 2020 election by casting an accessible absentee ballot.

21.     PLAINTIFF AMERICAN COUNCIL OF THE BLIND OF VIRGINIA, INC. ("ACB-VA"), is the Virginia State affiliate of the American Council of the Blind. ACB-VA is a 501(c)(3) non-profit corporation whose members include people who are blind, visually impaired, deaf-blind, and sighted. ACB-VA brings this suit on behalf of its members.

22.     ACB-VA's purpose is to support and promote the educational, vocational, and social advancement of blind persons. ACB-VA works in furtherance of its members' right to participate fully and equally in all aspects of their lives in Virginia, including in voting.

23.     ACB-VA is a membership organization with many blind and deaf-blind members, including Lori Scharff, who are registered to vote in Virginia and wish to vote privately and independently, as their fellow Virginians may, in the upcoming November 3, 2020 election by casting an accessible absentee ballot.

24.     Many of the NFBV and ACB-VA's members, including Carshena Gary, Lori Scharff, and John Halverson, are particularly susceptible to the threat of COVID-19 and therefore put themselves at heightened risk if they attempt to vote in person. Blind people are more likely to have the kinds of chronic health conditions, such as diabetes or high blood pressure,[2] that increase their risk of contracting or suffering serious consequences from COVID-19.[3] NFBV and ACB-VA have members with such conditions.

_____

[2] *Coronavirus 2019: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 21, 2020).
[3] *Vision Impairment and Chronic Health Conditions*, CDC, https://www.cdc.gov/visionhealth/living/index.html (last visited July 23, 2020).

25. In addition, many of NFBV and ACB-VA's blind members, including Plaintiffs Carshena Gary, Naim Muawia Abu-El Hawa, Lori Scharff, and John Halverson, must rely on public transportation services, which necessarily bring them into close proximity with others and puts them at risk of contracting COVID-19.

26. NFBV and ACB-VA's members, collectively and independently, face the threat of imminent injury as a result of Defendants' illegal conduct.

27. DEFENDANT VIRGINIA DEPARTMENT OF ELECTIONS ("VA DOE") is the State agency responsible for managing and supervising elections in Virginia.

28. VA DOE is responsible for ensuring that Virginia operates elections in conformity with state and federal law, including Title II of the ADA and Section 504.

29. VA DOE is a public entity under Title II of the ADA.

30. VA DOE receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance to develop, certify, and maintain voting, such as $9.5 million for COVID-19 related expenses through the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020) ("CARES Act"),[4] and $10.2 million in Help America Vote Act funds for Fiscal Year 2020.[5]

31. DEFENDANT CHRISTOPHER E. PIPER, sued in his official capacity, is the Commissioner of the VA DOE.

32. DEFENDANT VIRGINIA STATE BOARD OF ELECTIONS ("VA BOE") is the regulatory board for the VA DOE. VA BOE is authorized to prescribe standard forms for

---

[4] *See 2020 Cares Act Grants*, U.S. Elections Assistance Comm'n, https://www.eac.gov/payments-and-grants/2020-cares-act-grants (last visited July 22, 2020).

[5] https://www.eac.gov/sites/default/files/paymentgrants/Funding_Chart_ES.pdf (last visited July 26, 2020).

voter registration and elections and to supervise, coordinate, and adopt regulations governing the work of local electoral boards, registrars, and officers of elections in Virginia.

33.     VA BOE is responsible for ensuring that Virginia's local electoral boards, registrars, and offices operate elections in conformity with state and federal law, including Title II of the ADA and Section 504.

34.     VA BOE is a public entity under Title II of the ADA.

35.     VA BOE receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance to develop, certify, and maintain Virginia's voting program.

36.     DEFENDANT ROBERT H. BRINK, sued in his official capacity, is the Chair of the VA BOE.

37.     JOHN O'BANNON, sued in his official capacity, is the Vice Chair of the VA BOE.

38.     JAMILAH D. LECRUISE, sued in her official capacity, is the Secretary of the VA BOE.

## STATEMENT OF FACTS

### Absentee Voting in Virginia

39.     Nationally, people with disabilities report substantially more difficulty voting than others. According to one report, "[a]mong those who voted in a polling place in 2012, 30% of voters with disabilities reported some type of difficulty in voting, compared to 8% of voters without disabilities."[6] People with disabilities are more likely to vote by mail than other voters,

---

[6] Lisa Schur & Douglas Kruse, *Projecting the Number of Eligible Voters with Disabilities in the November 2016 Elections* 3 n.1 (2016), https://smlr.rutgers.edu/sites/default/files/documents/faculty_staff_docs/Kruse%20and%20Schur_Disability%20electorate%20projections%202016_9-8-16.pdf (hereinafter "Projecting the Number").

but almost 10% of voters with disabilities who voted by mail in 2012 "reported having difficulties in doing so, and the need for assistance in filling out or sending the ballot."[7]

40. Effective July 1, 2020, pursuant to the Code of Virginia § 24.2-700, Virginia voters have the right to vote by absentee ballot without providing a reason or excuse in an election in which they are qualified to vote.

41. Virginia's Absentee Voting Program requires voters to fill out a paper ballot using a pen or marker and to return the ballot by mail.

42. In order to cast an absentee vote, the voter must read the ballot in standard print, physically write and/or fill in the ballot choices, enclose the ballot in the envelope provided for that purpose, seal the envelope, fill in and sign the statement printed on the back of the envelope in the presence of a witness, who shall sign the same envelope, enclose the ballot envelope and any required assistance form within the envelope directed to the general registrar, and seal that envelope and mail it to the office of the general registrar or deliver it personally to the general registrar.

43. Requiring blind voters, including Plaintiffs, to read, mark, and sign their ballots and envelopes in hard copy forces them to seek assistance from other persons in order to vote absentee, depriving them of the right to cast a ballot privately and independently, as nondisabled voters may do.

44. Defendants provide no accessible means for voters with print disabilities to receive, review, mark, or submit an absentee ballot privately and independently.

---

[7] Lisa Schur, *Reducing Obstacles to Voting for People with Disabilities: White Paper prepared for Presidential Commission on Election Administration* 6 (2013), http://web.mit.edu/supportthevoter/www/files/2013/08/Disability-and-Voting-White-Paper-for-Presidential-Commission-Schur.docx.pdf (hereinafter "Reducing Obstacles").

45. The Fourth Circuit has made clear that such an inaccessible absentee voting system violates federal law. *National Federation of the Blind v. Lamone,* 813 F.3d 494 (4th Cir. 2016) ("We have little trouble concluding from the record before us that Maryland's absentee voting program does not provide disabled individuals an "opportunity to participate . . . equal to that afforded others. . . . [D]efendants have provided such a benefit [private, independent absentee voting] to non-disabled voters while denying that same benefit to plaintiffs on the basis of their disability. This is precisely the sort of harm the ADA seeks to prevent.").

**COVID-19 Forces Plaintiffs To Risk Their Lives To Vote Privately and Independently**

46. The Centers for Disease Control & Prevention ("CDC") urges jurisdictions to "consider offering alternatives to in-person voting" to reduce the spread of COVID-19.[8] The CDC also recognizes that "[m]ail-in voting can make it more difficult for voters with disabilities to exercise their right to vote. Election officials should ensure that accessible voting options are available and that these options are consistent with the recommendations for slowing the spread of COVID-19."[9]

47. According to the Virginia Department of Health, as of July 27, 2020, there are 86,072 confirmed and probable cases of COVID-19 in the state, 7,647 hospitalizations due to COVID-19 infection, and 2,048 deaths.[10]

48. In light of COVID-19, it is reasonably expected that significant numbers of voters will heed the Governor's advice and exercise the option to vote by absentee ballot in the

---

[8] *See Coronavirus Disease 2019 (COVID-19): Consideration for Election Polling Locations and Voters*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last visited July 19, 2020).

[9] *Id.*

[10] *COVID-19 Daily Dashboard*, https://www.vdh.virginia.gov/coronavirus/covid-19-daily-dashboard (last visited July 27, 2020).

November General Election, making the need for implementation of an accessible Absentee Voting Program more pressing than ever. In one sign of the likelihood of skyrocketing absentee turnout, in Virginia's June 2020 Democratic Primary, about 37% of voters returned absentee ballots. By comparison, only approximately 8% of voters returned absentee ballots in Virginia's June 2019 Democratic Primary.[11]

49.     Public health and government officials consider social distancing critical to prevent the spread of COVID-19. On June 30, 2020, Governor Northam issued Executive Order 67, effective July 1, 2020, in response to the COVID-19 public health emergency. Executive Order 67 urges Virginians to "remain cautious—continue teleworking whenever possible, wash our hands frequently, do not touch our faces, and wear face coverings."

50.     Requiring people with print disabilities to travel to a board of elections office to use a ballot marking device or to seek in-person assistance from others to complete their absentee ballots puts them at risk of COVID-19 infection.[12]

51.     The risk of contracting COVID-19 is particularly acute for people who are at high risk of serious complications or death from COVID-19, including older adults, those with immune disorders, heart, lung, kidney, or liver disease, diabetes, chronic lung disease (including chronic obstructive pulmonary disease), asthma, or obesity.[13]

---

[11] Data accessed from https://apps.elections.virginia.gov/SBE_CSV/ELECTIONS/ELECTIONTURNOUT. Open the links for "Turnout-2020 June Democratic Primary.csv" and "Turnout-2019 June Democratic Primary.csv." Percentages derived from the sum of "absentee_ballots" (Column H) divided by the sum of "TotalVoteTurnout" (Column K).

[12] *See Coronavirus Disease 2019 (COVID-19): People with Disabilities*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited July 19, 2020).

[13] *See Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 19, 2020).

52.     Individuals, such as Plaintiffs, who require assistance to read, fill out, and sign paper forms cannot both socially distance themselves from others and vote absentee in Virginia.

53.     Defendants' Absentee Voting Program puts Plaintiffs and other individuals with print disabilities at unnecessary risk of contracting COVID-19 by requiring them to come into close contact with others to assist them in reading, completing, and signing the absentee ballot.

54.     Defendants' Absentee Voting Program puts Plaintiffs and other individuals with print disabilities who cannot independently and privately vote absentee at unnecessary risks of contracting COVID-19 by requiring them to travel to their polling places or board of election to vote in person.

55.     If individuals with print disabilities are not willing to risk contracting COVID-19 by voting with assistance or by voting in person, they must give up their right to vote.

**Mechanisms Available To Provide Accessible Absentee Ballots**

56.     Accessible alternatives to paper absentee ballots exist and are used by other states.

57.     If Virginia implemented an accessible alternative to paper absentee ballots, Plaintiffs would have an equal opportunity to vote privately and independently via absentee ballot.

58.     Virginia has secured an accessible email ballot delivery system for military and overseas citizens pursuant to its obligation under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20301 *et seq.* This system is called the myBallot KNOWiNK system.

59.     However, Defendants are making the KNOWiNK system available only to overseas voters from select counties. They are not making the system available to voters with print disabilities at all or to voters statewide.

60.     On information and belief, the myBallot KNOWiNK system could be made available to all Virginia voters with print disabilities statewide in time for the November 3, 2020 election.

61.     The State of Maryland developed an online ballot marking tool that allows voters to view and mark their absentee ballots on their computers.

62.     Maryland created the tool to work with screen access software and has extensively tested the tool's usability for individuals with a variety of disabilities.

63.     Maryland has used its online ballot marking tool since the November 2014 election to allow Maryland voters with disabilities to mark their ballots on their computers, review a summary screen showing their marked ballot, and print out their marked ballot.

64.     On information and belief, Maryland shares its online ballot marking technology with other states at no charge.

65.     Numerous other states provide RAVBM tools using commercially available systems that allow voters to receive ballots online or by email, mark ballots on their computers using assistive technology, and return ballots via online submission, email, fax, or mail.

66.     Examples of RAVBM systems used in other states include Five Cedars Alternate Format Ballot, Democracy Live OmniBallot, and Prime III.

67.     Some of the commercially available RAVBM systems, including Prime III, are available free of charge.

68.     If Virginia chooses not to make myBallot KNOWiNK available to voters with print disabilities, it could implement a commercially available remote accessible electronic ballot marking tool in time for the November 3, 2020 election.

## Individual Plaintiffs' Need for Accessible Absentee Voting

69.     Plaintiff CARSHENA GARY lives in Capron, Virginia, and is a member of NFBV.

70.     Ms. Gary is blind and cannot read print. She uses assistive technology, such as JAWS screen reader and Apple VoiceOver, to read printed materials aloud on a computer or smart device.

71.     Ms. Gary is registered to vote in Virginia and has voted in previous elections.

72.     Because of the COVID-19 pandemic, Ms. Gary does not feel safe going to her local polling place to vote.

73.     Ms. Gary is concerned about contracting COVID-19 while voting because she has diabetes, asthma, and Guillain-Barre syndrome, which place her at increased risk of severe illness from the virus.

74.     Ms. Gary is uncertain whether other individuals at the polling place or on public transportation to the polling place will wear face coverings to help prevent the spread of the COVID-19 virus. Because she is blind, she will be unable to confirm the use of face coverings or adequate social distancing at the polling place.

75.     Voting privately and independently is important to Ms. Gary. If available, she intends to apply for an accessible mail-in ballot so that she can exercise her right to vote in the November 3, 2020 General Election.

76.     Ms. Gary is unable to vote absentee independently and privately because Defendants refuse to make a RAVBM system available to voters with print disabilities.

77.     PLAINTIFF LORI SCHARFF resides in Waynesboro, Virginia, and is a member of ACB-VA.

78.    Ms. Scharff is blind and cannot read print. She uses assistive technology, such as JAWS screen reader and Apple VoiceOver, to read printed materials aloud on a computer or smart device.

79.    Ms. Scharff is registered to vote in Virginia and has voted in previous elections.

80.    Because of the COVID-19 pandemic, Ms. Scharff does not feel safe going to her local polling place to vote.

81.    Ms. Scharff is concerned about contracting COVID-19 while voting because she has multiple sclerosis, which places her at increased risk of severe illness from the virus.

82.    Ms. Scharff is uncertain whether other individuals at the polling place or on public transportation to the polling place will wear face coverings to help prevent the spread of the COVID-19 virus. Because she is blind, she will be unable to confirm the use of face coverings or adequate social distancing at the polling place.

83.    Voting privately and independently is important to Ms. Scharff. If available, she intends to apply for an accessible mail-in ballot so that she can exercise her right to vote in the November 3, 2020 General Election.

84.    Ms. Scharff is unable to vote absentee independently and privately because Defendants refuse to make a RAVBM system available to voters with print disabilities.

85.    PLAINTIFF REGINA ROOT lives in Williamsburg, Virginia.

86.    Dr. Root has nystagmus and has difficulty reading and writing standard print, as well as central nervous system and manual dexterity disabilities as a result of a brain tumor. She uses magnification software to magnify print to 24 point font.

87.    Dr. Root is registered to vote in Virginia and has voted in previous elections.

88. Because of the COVID-19 pandemic, Dr. Root does not feel safe going to her local polling place to vote.

89. Voting privately and independently is important to Dr. Root. If available, she intends to apply for an accessible mail-in ballot so that she can exercise her right to vote in the November 3, 2020 General Election.

90. Dr. Root is unable to vote absentee independently and privately because Defendants refuse to make a RAVBM system available to voters with print disabilities.

91. PLAINTIFF NAIM MUAWIA ABU-EL HAWA lives in Vienna, Virginia.

92. Mr. Hawa is blind and cannot read print. He uses assistive technology, such as JAWS screen reader and Apple VoiceOver, to read printed materials aloud on a computer or smart device, or via a refreshable Braille display.

93. Mr. Hawa is registered to vote in Virginia and has voted in previous elections.

94. Because of the COVID-19 pandemic, Mr. Hawa does not feel safe going to his local polling place to vote.

95. Mr. Hawa is uncertain whether other individuals at the polling place or on public transportation to the polling place will wear face coverings to help prevent the spread of the COVID-19 virus. Because he is blind, he will be unable to confirm the use of face coverings or adequate social distancing at the polling place.

96. Voting privately and independently is important to Mr. Hawa. If available, he intends to apply for an accessible mail-in ballot so that he can exercise his right to vote in the November 3, 2020 General Election.

97. Mr. Hawa is unable to vote absentee independently and privately because Defendants refuse to make a RAVBM system available to voters with print disabilities.

98.     PLAINTIFF JOHN HALVERSON lives in Arlington, Virginia, with his wife, who is also blind.

99.     Dr. Halverson is blind and cannot read print. He uses assistive technology, such as JAWS screen reader and Apple VoiceOver, to read printed materials aloud on a computer or smart device, or via a refreshable Braille display.

100.    Dr. Halverson is registered to vote in Virginia and has voted in previous elections.

101.    Because of the COVID-19 pandemic, Dr. Halverson does not feel safe going to his local polling place to vote.

102.    Dr. Halverson is concerned about contracting COVID-19 while voting because he has diabetes, COPD, high blood pressure, and an irregular heartbeat, which place him at increased risk of severe illness from the virus.

103.    Dr. Halverson is uncertain whether other individuals at the polling place or on public transportation to the polling place will wear face coverings to help prevent the spread of the COVID-19 virus. Because he is blind, he will be unable to confirm the use of face coverings or adequate social distancing at the polling place.

104.    Voting privately and independently is important to Dr. Halverson. If available, he intends to apply for an accessible mail-in ballot so that he can exercise his right to vote in the November 3, 2020 General Election.

105.    Dr. Halverson is unable to vote absentee independently and privately because Defendants refuse to make a RAVBM system available to voters with print disabilities.

**Communications with Defendants**

106.    Plaintiffs and the disability community have requested that Defendants make Virginia's Absentee Voting Program accessible.

107. On September 27, 2019, the National Federation of the Blind submitted a letter to Defendants reminding them that the ADA and Section 504 require implementation of an accessible absentee ballot system to ensure that voters with disabilities have an equal opportunity to cast absentee ballots privately and independently and provided information on available accessible systems.

108. On October 15, 2019, Defendant Piper responded to NFB's September 27, 2019 letter and stated: "We are aware of the Fourth Circuit's decision in *National Federation of the Blind v. Lamone*, as well as the requirements of Title II of the Americans with Disabilities Act." Yet, Defendants have not made any efforts to ensure their Absentee Voting Program complies with the ADA.

109. In anticipation of the primary election held in June 2020, NFBV wrote a follow up letter to Defendant Piper on April 21, 2020. NFBV informed Defendant Piper that NFBV was "hearing from many blind constituents who are very alarmed about having a private and independent means to vote in the upcoming elections." NFBV explained Defendant Piper's obligation under federal law to ensure that voters with disabilities are able to vote privately and independently. NFBV explained that other states were meeting their legal obligations under the ADA and Section 504 by allowing voters with disabilities to use RAVBM tools. NFBV offered to meet with Defendant Piper to educate him about accessible voting options and to collaborate regarding implementation of a RAVBM tool in Virginia.

110. In response to NFBV's April 21 letter, Defendant Piper met with NFBV on May 1, 2020. NFBV was hopeful that they could work with Defendants to implement a remote access vote by mail tool, but Defendant Piper did not follow up on the meeting before the June 23, 2020

primary election. As a result, voters with print disabilities were not able to vote privately and independently in Virginia's May 19, 2020 municipal elections or June 23, 2020 primary election.

111. NFBV followed up with Defendant Piper several times between May 1, 2020, and July 9, 2020, when NFBV once again met with Defendants. On July 9, 2020 Defendants informed NFBV that, while they have completed a successful pilot of the myBallot KNOWiNK system in one county, they only intended to expand its use to a few other counties and they would not be making it available to voters with disabilities.

112. On June 28, 2020, ACB-VA submitted a letter to Defendants reminding them that the ADA and Section 504 require implementation of an accessible absentee ballot system to ensure that voters with disabilities have an equal opportunity to cast absentee ballots privately and independently and provided information on accessible systems that are available. Defendants did not respond to this letter.

113. On July 15, 2020, undersigned counsel wrote to Defendant Piper, as well as Governor Northam and Attorney General Herring, on behalf of a coalition of disability rights organizations, including Plaintiffs NFBV and ACB-VA, to request the Commonwealth's written commitment to adopt and implement a remote, accessible electronic absentee ballot marking tool in compliance with federal law in time for the upcoming general election. Defendant Piper did not respond to this request.

114. Defendants have refused to make the Absentee Voting Program accessible despite Plaintiffs' efforts to resolve this matter without litigation.

## FIRST CLAIM FOR RELIEF

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12131 *et seq.*

115.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

116.    Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, guarantees individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

117.    Title II mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

118.    In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. §35.130(b)(1)(ii)–(iii).

119.    Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to

participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160.

120.    The ADA regulations provide that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities."  28 C.F.R. § 35.160(b)(2).

121.    To be effective, the "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

122.    Auxiliary aids and services specifically include "screen reader software; magnification software; optical readers; . . . [and] accessible electronic and information technology." 28 C.F.R. § 35.104.

123.    Defendants VA DOE and VA BOE are public entities under Title II of the ADA. Individual Defendants are sued in their official capacities as those responsible for carrying out the operations of Defendant agencies.

124.    Absentee voting is a service, program, or activity provided by Defendants.

125.    Individual Plaintiffs are individuals with disabilities under the ADA.

126.    Individual Plaintiffs are lawfully registered to vote in Virginia and intend to vote in upcoming elections, including the November 3, 2020 election, and are thus qualified individuals entitled to the protections of the ADA.

127.    Organizational Plaintiffs NFBV and ACB-VA work to protect the rights of blind people in Virginia and have members who are qualified individuals with disabilities under the ADA.

128. Remote, accessible absentee ballot tools are readily available to Defendants and allow independent, private absentee voting for people with print disabilities.

129. Defendants have failed to meet their obligations to provide voters with disabilities an opportunity to vote absentee that is equal to the opportunity provided to other voters.

130. By failing to implement a readily available RAVBM tool, Defendants have refused to provide an auxiliary aid or service necessary to allow Plaintiffs to vote absentee as effectively as voters without disabilities.

131. During the current pandemic, implementing accessible absentee voting would enable Virginia voters with print disabilities to vote privately and independently without compromising their health or their lives by risking exposure to COVID-19.

132. Accordingly, Defendants have discriminated against Plaintiffs because their service, program, or activity of absentee voting is inaccessible.

133. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting Program, they will be unable to vote privately and independently by absentee ballot in the November 3, 2020 election and in future elections, and in order to vote in person they will be forced to risk their health and safety due to the threat of COVID-19.

134. In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot privately and independently in upcoming elections.

135. Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794 *et seq.*

136.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

137.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

138.    Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" 29 U.S.C. § 794(b)(1).

139.    Such federally funded entities may not, *inter alia*, in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 C.F.R. § 2.503(b)(1)(i).

140.    Such federally funded entities must also "insure that communications with their . . . beneficiaries are effectively conveyed to those having impaired vision and hearing," 28 C.F.R. § 42.503(e), and, if the entity has 15 or more employees, must "provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the

participation of such persons in a program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(f).

141.    Defendants VA DOE and VA BOE, agencies of the Commonwealth of Virginia, receive federal financial assistance, thereby subjecting themselves to the requirements of Section 504. Individual Defendants are sued in their official capacities as those responsible for carrying out the operations of Defendants VA BOE and VA DOE.

142.    Defendants VA DOE and VA BOE have 15 or more employees.

143.    Absentee voting is a service, program, or activity provided by VA DOE and VA BOE.

144.    Individual Plaintiffs are people with disabilities under Section 504.

145.    Plaintiffs are lawfully registered to vote in Virginia in all upcoming elections, including the November 3, 2020 election, and thus are qualified individuals with disabilities entitled to the protections of Section 504.

146.    Organizational Plaintiffs NFBV and ACB-VA have members who are qualified individuals with disabilities under Section 504.

147.    Remote, accessible absentee ballot tools are readily available to Defendants and allow independent, private absentee voting for people with print disabilities.

148.    Defendants have failed to meet their obligations to provide voters with disabilities with an opportunity to vote absentee that is equal to the opportunity provided to other voters.

149.    By failing to implement a readily available RAVBM tool, Defendants have refused to provide an auxiliary aid or service necessary to allow plaintiffs to vote absentee as effectively as voters without disabilities.

150. During the current pandemic, implementing accessible absentee voting would enable Virginia voters with print disabilities to vote privately and independently without compromising their health or their lives by risking exposure to COVID-19.

151. Accordingly, Defendants have discriminated against Plaintiffs because their service, program, or activity of absentee voting is inaccessible.

152. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting Program, they will be unable to vote privately and independently by absentee ballot in the November 3, 2020 election and in future elections, and in order to vote they will be forced to risk their health and safety.

153. In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot privately and independently in upcoming elections.

154. Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF VIRGINIA CODE

155. The right to a secret ballot is enshrined in the Constitution of Virginia. Va. Const. Art. II, § 3.

156. The Code of Virginia states, "No person with a disability who is otherwise entitled to vote . . . shall be denied the opportunity to register or vote in this Commonwealth because of such disability." Va. Code § 51.5-43.

157. The Virginia Code defines a person with a disability as "any person who has a physical or mental impairment that substantially limits one or more of his major life activities or who has a record of such impairment." Va. Code § 51.5-40.1.

158. Plaintiffs have print disabilities that impact the major life activities of seeing, moving, and/or writing, and are thus individuals with disabilities within the meaning of the Virginia Code. Va. Code § 51.5-40.1.

159. Plaintiffs are individuals with disabilities who are lawfully registered to vote in Virginia in all upcoming elections, including the November 3, 2020 election, and thus are qualified individuals with disabilities entitled to the protections of the Code of Virginia.

160. Virginia's Absentee Voting Program deprives Plaintiffs of their right to cast a private, independent absentee ballot because it requires Plaintiffs to vote via paper ballot.

161. In order to cast a vote using a paper ballot, a voter is required to read standard print, physically write and/or fill in the ballot choices, certify the ballot via a signature on the envelope, secure a witness's signature, and mail the ballot back to the appropriate voting official to be counted. These requirements pose barriers to individuals with print disabilities, including Plaintiffs, that force those individuals to seek assistance from other persons in order to vote absentee. Virginia's Absentee Voting Program therefore deprives people with print disabilities of the right to cast an absentee ballot secretly and independently.

162. Remote, accessible absentee ballot systems are readily available to Defendants and allow independent, secret absentee voting for people with print disabilities.

163. Defendants have failed to meet their obligations to provide voters with disabilities with an opportunity to vote absentee that is equal to the opportunity provided to other voters.

164.     Accordingly, Defendants have discriminated against Plaintiffs by failing to implement a readily available RAVBM system. Defendants have denied Plaintiffs the equal opportunity to vote secretly and independently because of their disabilities.

165.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting Program, they will be unable to vote secretly and independently by absentee ballot in the November 3, 2020 election and in future elections, and in order to vote in person they will be forced to risk their health and safety due to the threat of COVID-19.

166.     In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot secretly and independently in upcoming elections.

167.     Plaintiffs are entitled to injunctive relief and to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court to provide relief as set forth below:

168.     A declaration that Defendants have violated and continue to violate the ADA, Section 504, and Virginia Code by failing to provide individuals with print disabilities an accessible means of receiving, marking, and submitting absentee ballots with privacy and independence;

169.     A preliminary and permanent injunction prohibiting Defendants from violating the ADA, Section 504, and Virginia Code § 51.5-43 and requiring them to offer a private and independent method of absentee voting that is accessible for Plaintiffs and others with print disabilities in time for use by voters in the November 3, 2020 election and in all future elections;

170.     A preliminary and permanent injunction requiring Defendants to provide immediate guidance, training, and technical assistance to the elections officials of each voting jurisdiction within the Commonwealth of Virginia regarding the proper and timely implementation of the private and independent accessible method of absentee voting;

171.     A preliminary and permanent injunction requiring Defendants to provide immediate notice, guidance, and training to voters with disabilities throughout the Commonwealth of Virginia regarding the availability and use of the private and independent accessible method of absentee voting;

172.     An award of Plaintiffs' reasonable attorneys' fees and costs; and

173.     Such other and further relief as the Court may deem just and proper.


DATE: July 27, 2020

                                    Respectfully,

                                    BY: /s/ Steven M. Traubert
                                    Steven M. Traubert, VSB#41128
                                    Zachary S. Devore, VSB#65401
                                    disAbility Law Center of Virginia
                                    1512 Willow Lawn Drive, Suite 100
                                    Richmond, VA 23230
                                    Phone: (804) 225-2042
                                    Fax: (804) 662-7431
                                    Steven.Trauber@dlcv.org
                                    Zachary.devore@dlcv.org

                                    Eve L. Hill (*pro hac vice* to be filed)
                                    Abigail Graber (*pro hac vice* to be filed)
                                    Brown Goldstein & Levy
                                    120 E. Baltimore St., Ste. 1700
                                    Baltimore, MD 21202
                                    (410) 962-1030 (phone)
                                    (410) 385-0869 (fax)
                                    ehill@browngold.com

agraber@browngold.com

Steven P. Hollman (*pro hac vice* to be filed)
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6801
Phone: (202) 747-1941
Fax: (202) 747-3912
shollman@sheppardmullin.com

Kaitlin Banner (*pro hac vice* to be filed)
Margaret Hart (*pro hac vice* to be filed)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
margaret_hart@washlaw.org

*Counsel for Plaintiffs*