**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |  |
|---|---|---|
| CARSHENA GARY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00860-CMH-TCB |
| | ) | |
| VIRGINIA DEPARTMENT OF ELECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

Dated: August 10, 2020

Steven M. Traubert, VSB#41128
Zachary S. Devore, VSB#65401
Disability Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, VA 23230
Phone: (804) 225-2042
Fax: (804) 662-7431
Steven.Trauber@dlcv.org
Zachary.devore@dlcv.org

Eve L. Hill (*pro hac vice*)
Abigail Graber (*pro hac vice*)
Brown Goldstein & Levy
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
agraber@browngold.com

Steven P. Hollman (*pro hac vice*)
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Avenue, NW, Suite 100

Washington, DC 20006-6801
Phone: (202) 747-1941
Fax: (202) 747-3912
shollman@sheppardmullin.com

Kaitlin Banner (*pro hac vice*)
Margaret Hart (*pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
margaret_hart@washlaw.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS ................................................... 2

    A.    The Virginia Absentee Voting Program. ............................ 2

    B.    The COVID-19 Pandemic Has Magnified the Importance of Absentee Voting. ......................................................... 4

    C.    Individual Plaintiffs Must Overcome Significant Obstacles to Participate in the Virginia Absentee Voting Program. ............................ 8

III.  LEGAL STANDARD........................................................... 11

IV.  ARGUMENT ..................................................................... 12

    A.    Plaintiffs Are Likely To Succeed on the Merits of Their ADA, Section 504, and State Law Claims. ...................................... 12

        1.    Plaintiffs are individuals with disabilities................................ 13

        2.    Plaintiffs are otherwise qualified to participate in Virginia's Absentee Voting Program....................................... 14

        3.    Defendants' Absentee Voting Program discriminates against Plaintiffs because of their disabilities. ....................... 14

        4.    Expanding its RAVBM System to Voters with Print Disabilities Statewide Would Not Pose an Undue Burden or Fundamental Alteration to the Commonwealth............................ 17

    B.    A Preliminary Injunction Is Necessary to Prevent Irreparable Harm to Plaintiffs.......................................................... 19

    C.    The Balance of Hardships Is In Plaintiffs' Favor. ................. 21

    D.    Injunctive Relief Will Service the Public Interest. ............... 22

V.   CONCLUSION................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Considerations for Election Polling Locations*
  CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/election-
  polling-locations.html (last updated June 22, 2020)..............................................................7, 8

*Am. Council of the Blind v. Paulson*
  525 F.3d 1256 (D.C. Cir. 2008) .................................................................................................15

*Baird v. Rose*
  192 F.3d 462 (4th Cir. 1999) .....................................................................................................13

*Burlington N.R.R. Co. v. Dep't of Revenue*
  934 F.2d 1064 (9th Cir. 1991) ...................................................................................................20

*Burson v. Freeman*
  504 U.S. 191 (1992).....................................................................................................................20

*Cal. Council of the Blind v. Cty. of Alameda*
  985 F. Supp. 2d 1229 (N.D. Cal. 2013) ..............................................................................12, 15

*Constantine v. Rectors & Visitors of George Mason Univ.*
  411 F.3d 474 (4th Cir. 2005) .....................................................................................................13

*CSX Transp., Inc. v. Tenn. State Bd. of Equalization*
  964 F.2d 548 (6th Cir. 1992) .....................................................................................................20

*Disabled in Action v. Bd. of Elections*
  752 F.3d 189 (2d Cir. 2014)..................................................................................................12, 15

*Doe v. University of Md. Med. Sys. Corp.*
  50 F.3d 1261 (4th Cir. 1995) .....................................................................................................13

*EEOC v. Cosmair, Inc.*
  821 F.2d 1085 (5th Cir. 1986) ...................................................................................................20

*Fla. Democratic Party v. Scott*
  215 F. Supp. 3d 1250 (N.D. Fla. 2016)......................................................................................20

*Harman v. Forseenius*
  380 U.S. 528 (1965).....................................................................................................................22

*Hindel v. Husted*
  875 F.3d 344 (6th Cir. 2017) .....................................................................................................17

*Jacques v. Clean-Up Grp.*
  96 F.3d 506 (1st Cir. 1996)........................................................................................................19

*Jones v. City of Monroe*
   341 F.3d 474 (6th Cir. 2003) ...............................................................................17

*League of Women Voters of N.C. v. North Carolina*
   769 F.3d 224 (4th Cir. 2014) ...............................................................................20

*League of Women Voters of Va. v. Va. State Bd. of Elections*
   No. 6:20-CV-00024, --- F. Supp. 3d ----, 2020 WL 2158249 (W.D. Va. May
   5, 2020) ...........................................................................................................3, 4

*Mary Jo C. v. New York State and Local Ret. Sys.*
   707 F.3d 144 (2d Cir. 2013) ...............................................................................19

*Metro. Life Ins. Co. v. Pettit*
   164 F.3d 857 (4th Cir. 1998) ...............................................................................19

*Nat'l Fed'n of the Blind, Inc. v. Lamone*
   No. CIV.A. RDB-14-1631, 2014 WL 4388342 (D. Md. Sept. 4, 2014), *aff'd*
   813 F.3d 494 ...................................................................................................22

*Nat'l Fed'n of the Blind v. Lamone*
   813 F.3d 494 (4th Cir. 2016) .......................................12, 14, 15, 16, 17, 18, 19, 22

*Nat'l Home Equity Mortgage Assoc. v. Face*
   239 F.3d 633, 2001 U.S. App. LEXIS 1735, 2001 WL 101454 (4th Cir. 2001) ..................19

*Obama for Am. v. Husted*
   697 F.3d 423 (6th Cir. 2012) ...............................................................................22

*Perez-Perez v. Adducci*
   No. 20-10833, --- F. Supp. 3d ---, 2020 WL 2305276 (E.D. Mich. May 9,
   2020) ...............................................................................................................21

*Perry v. Judd*
   840 F. Supp. 2d 945 (E.D. Va. 2018) ...................................................................22

*Reaching Hearts Int'l, Inc. v. Prince George's Cty.*
   584 F. Supp. 2d 766 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th Cir. 2010) ...................22

*Real Truth About Obama, Inc. v. Fed. Elec. Comm.*
   575 F.3d 342 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010)...................11

*Reynolds v. Sims*
   377 U.S. 533 (1964)...........................................................................................20

*Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*
   673 F.3d 333. (4th Cir. 2012) ...............................................................................12

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*
   251 F.3d 814 (9th Cir. 2001) ...............................................................................19

*Steves and Sons, Inc. v. JELD-WEN, Inc.*
  3:20-CV-00098, 2020 WL 1844791 (E.D. Va. Apr. 10, 2020) ............................................21

*Stinnie v. Holcomb*
  355 F. Supp. 3d 514 (W.D. Va. 2018) ..................................................................................19

*Tennessee v. Lane*
  541 U.S. 509 (2004) ..............................................................................................................22

*Thakker v. Doll*
  No. 1:20-CV-480, --- F. Supp. 3d ---. 2020 WL 1671563 (M.D. Pa. Mar. 31,
  2020) .....................................................................................................................................21

*Tyndall v. National Educ. Ctrs., Inc.*
  31 F.3d 209 (4th Cir. 1994) ..................................................................................................12

*United States v. Cent. Carolina Bank & Trust Co.*
  431 F.2d 972 (4th Cir. 1970) ................................................................................................19

*Wesberry v. Sanders*
  376 U.S. 1, 84 S. Ct. 526, 11 L. Ed. 2d 481 (1964) .............................................................20

*Winter v. Natural Res. Def. Council Inc.*
  555 U.S. 7 (2008) ..................................................................................................................11

**Statutes**

29 U.S.C. § 794(a) .....................................................................................................................12, 13

42 U.S.C. § 12102 .............................................................................................................................13

42 U.S.C. § 12132 .............................................................................................................................14

42 U.S.C. § 12188(a)(2) ....................................................................................................................20

Age Discrimination in Employment Act ...........................................................................................20

Americans with Disabilities Act Title II, 42 U.S.C. §
  12131 *et seq.* ......................................................................2, 12, 14, 15, 16, 17, 18, 20, 22

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020) ...................13

Help America Vote Act ......................................................................................................................13

Rehabilitation Act of 1973 ...........................................................................................................12, 19

Rehabilitation Act § 504, 29 U.S.C. § 794 *et seq.* ....................................................2, 12, 13, 14, 22

Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C.
  § 20301 *et seq.* ...........................................................................................................1, 3, 4, 16

VA Code § 24.2-700 ...................................................................................2, 3, 8, 12, 15

VA Code § 24.2-700 *et seq.* ...................................................................................2

Va. Code § 24.2-701(A) ...........................................................................................2, 3

Va. Code § 24.2-706(B) ...........................................................................................3

VA Code § 24.2-706(D) ...........................................................................................1, 3

Virginians with Disabilities Act, Va. Code § 51.5-1 *et seq.*..................................2, 12

Virginians with Disabilities Act, Va. Code § 51.5-40.1 ..........................................13

**Other Authorities**

28 C.F.R.
    § 35.108(a)(1)(i) ................................................................................13
    § 35.130(b)(1)(ii) ...............................................................................12
    § 35.130(b)(1)(ii)–(iii) .......................................................................14
    § 35.130(b)(7) ....................................................................................17
    § 35.160(b)(1) ..............................................................................14, 16
    § 35.160(b)(2) ..............................................................................15, 16
    § 35.164 ..............................................................................................17
    § 41.51(b)(1)(ii)–(iii) ........................................................................14

2020 Cares Act Grants, U.S. Elections Assistance Comm'n,
    https://www.eac.gov/payments-and-grants/2020-cares-act-grants (last visited
    July 22, 2020);
    https://www.eac.gov/sites/default/files/paymentgrants/Funding_Chart_ES.pdf
    (last visited July 26, 2020) ...............................................................................13

Betsy McKay *et al*., *Coronavirus Declared Pandemic by World Health
    Organization*, Wall Street Journal (Mar. 11, 2020) ...................................4

*Coronavirus Disease 2019 (COVID-19): People with Certain Medical
    Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
    precautions/groups-at-higher-risk.html (last visited Aug. 7, 2020)......................5, 6, 9, 10, 11

*Daily Dashboard*, Va. Dep't Health, https://www.vdh.virginia.gov/
    coronavirus/covid-19-daily-dashboard (last updated Aug. 9, 2020) ........................5

Executive Order 67, effective July 1, 2020....................................................................6

Fears *et al*., Persistence of Severe Acute Respiratory Syndrome Coronavirus 2 in
    Aerosol Suspensions, Emerg Infect Dis. (2020),
    https://doi.org/10.3201/eid2609.201806;....................................................5

Future of the COVID-19 Pandemic: Lessons Learned from Pandemic Influenza, Ctr. for Infectious Disease Research & Policy, 3 (Apr. 30, 2020), https://www.cidrap.umn.edu/sites/default/files/public/downloads/cidrap-covid19-viewpoint-part1_0.pdf .............................................................................7

*Governor Northam Postpones Upcoming May Elections in Response to COVID-19/Virginians encouraged to vote absentee by mail,* https://www.governor.virginia.gov/newsroom/all-releases/2020/april/headline-856329-en.html (Apr. 24, 2020 release) (last visited Aug. 9, 2020)..........................................................................................7

Hearing Before U.S. Senate Committee on Health, Education, Labor & Pension, 116th Congress at 32:06 (May 12, 2020) (Testimony of Dr. Anthony Fauci, M.D., Director, Nat. Inst. of Allergy and Infectious Diseases) *available at* https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12..................................................................................7

*How It Spreads*, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last updated June 16, 2020)...................................................................5

*How to Protect Yourself and Others,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated July 31, 2020) ....................................................6

Jianyun Lu *et al.*, *COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020*, Emerg. Infect. Dis. (2020), https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article..........................................5

*Key Measures*, Va. Dep't Health, https://www.vdh.virginia.gov/coronavirus/key-measures (last updated Aug. 7, 2020)....................................................................5

Monica Gandhi et. al. *Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control COVID-19* ...........................................................................4

Morbidity and Mortality Weekly Report Early Release (May 12, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e6.htm; ...................................5

New England Journal of Med. (Apr. 24, 2020), https://www.nejm.org/doi/full/10.1056/NEJMe2009758 ...........................................4

New England Journal of Medicine ........................................................................4

Provisional Death Counts for Coronavirus Disease 2019 (COVID-19) tbl.1, CDC, https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm (last updated Aug. 7, 2020) .....................................................................................................................5

Savannah Behrmann, *'Convinced': Fauci Says There Will Be Coronavirus in the Fall After Trump Says 'It May Not Come Back'*, USA Today (Apr. 23, 2020) ........6

Update: A Primer for State and Local Governments 8 (2015),
https://www.ada.gov/regs2010/titleII_2010/titleII_primer.pdf ................................................17

Va. Executive Order No. 2020-67,
https://www.governor.virginia.gov/media/governorvirginiagov/executive-
actions/EO-67-and-Order-of-Public-Health-Emergency-Seven---Phase-Three-
Easing-of-Certain-Temporary-Restrictions-Due-to-Novel-Coronavirus-
(COVID-19).pdf........................................................................................................6

Valentyn Stadnytskyi V *et al.*, The Airborne Lifetime of Small Speech Droplets
and Their Potential Importance in SARS-CoV-2 Transmission, 117
Proceedings of the Nat'l Acads. of Sci of the United States of Am. 11875,
(2020), https://www.pnas.org/content/pnas/117/22/11875.full.pdf...........................................5

*Virginians encouraged to vote absentee by mail,*
https://www.governor.virginia.gov/newsroom/all-
releases/2020/april/headline-856329-en.html (Apr. 24, 2020 release) (last
visited Aug. 9, 2020)................................................................................................1

*VotingWords Accessible Vote-By-Mail*, https://voting.works/avbm/ (last visited
August 10, 2020)......................................................................................................18

*VotingWorks Accessible Vote-By-Mail*, VotingWorks, https://voting.works/avbm
(last visited Aug. 7, 2020)..........................................................................................3

## I.        <u>INTRODUCTION</u>

This is an action for injunctive relief to give Virginia citizens with disabilities equal access to absentee ballots in the upcoming General Election in November. The right to cast an independent and private vote is a cornerstone of our democracy. That right is severely compromised for many eligible voters in Virginia with disabilities who wish to vote absentee, as other Virginia voters can. Because absentee ballots are provided only in hard copy and must be read in standard print and filled in by hand, Virginia citizens who are blind, have low vision, or impaired manual dexterity (collectively herein, "print disabilities") cannot cast their ballots privately and independently. Instead, they must reveal their choices to another person and hope that person correctly records their votes. If they want to exercise their right to a secret vote, they must risk infection from the coronavirus SARS-CoV-2 ("COVID-19") by traveling to the polls to vote in person.  This presents exactly the dilemma that Gov. Ralph Northam recognized Virginia voters should not have to confront: "Virginians should never have to choose between casting a ballot and risking their health."[1]

Virginia already has deployed technology that could address this fundamental unfairness to Virginia citizens with disabilities. Pursuant to the federal Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20301 *et seq*., Virginia permits military service and overseas voters to receive ballots through accessible electronic means. VA Code § 24.2-706(D). Such remote accessible vote-by-mail ("RAVBM") tools can also enable voters with disabilities to privately and independently mark their absentee ballots using their computers, phones, or other devices. Yet, despite the fact that the Virginia Board of Elections already uses

---

[1] *Governor Northam Postpones Upcoming May Elections in Response to COVID-19/ Virginians encouraged to vote absentee by mail,* https://www.governor.virginia.gov/newsroom/all-releases/2020/april/headline-856329-en.html (Apr. 24, 2020 release) (last visited Aug. 9, 2020).

an RAVBM tool and that Virginia is facing COVID-19 health crisis, Defendants would not commit to making this system available to voters with print disabilities in the 2020 November general election.

The COVID-19 emergency has exacerbated this fundamental inequity faced by voters with print disabilities who wish to participate in Virginia's Absentee Voting Program. Defendants' failure is a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA" or "Title II), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Section 504"), and the Virginians with Disabilities Act, Va. Code § 51.5-1 *et seq.*

The rights violation—the deprivation of equal access to the ballot—is incontrovertible, as is the irreparable injury with which Plaintiffs are threatened. Plaintiffs seek preliminary injunctive relief in the form of an affirmative order directing Defendants to allow voters with print disabilities statewide to use the Commonwealth's existing RAVBM tool for the November general election.

## II.     STATEMENT OF FACTS

### A.     The Virginia Absentee Voting Program.

In Virginia, "[a]ny registered voter may vote by absentee ballot in accordance with the provisions of VA Code § 24.2-700 *et seq.* in any election in which he is qualified to vote." VA Code § 24.2-700 (the "Virginia Absentee Voting Program"). The Department of Elections must implement a system that enables eligible persons to request and receive an absentee ballot application. *Id.* § 24.2-701(A). Absentee ballots must be made available forty-five days prior to the November 3, 2020 general election—i.e., by Friday, September 18, 2020. *Id.* § 24.2-612. The legislature has expanded the Virginia Absentee Voting Program to all voters in Virginia. 2020 VA S.B. 111.

Virginia voters may apply for absentee ballots over the Internet. Va. Code § 24.2-701(A).

When a registrar receives an absentee ballot application from a Virginia voter who is *not* a

UOCAVA voter, the registrar (1) verifies that the individual properly completed the application

and is a registered voter in the jurisdiction and (2) mails the voter an envelope containing the

blank paper ballot, an envelope for resealing the ballot once marked, a properly addressed return

envelope to mail the ballot back to the general registrar, and printed instructions for completing

and returning the ballot. Va. Code § 24.2-706(B). The envelope for returning the marked ballot

includes a "Statement of Voter" that must be signed and dated by the voter and a witness.[2] *Id.*

A UOCAVA voter, on the other hand, can request, receive, and mark that voter's ballot

via electronic transmission. *Id.* § 24.2-706(D). Virginia already has secured and used an email

ballot delivery system – the myBallot KNOWiNK system provided by VotingWorks – for such

voters.[3] This system is compatible with screen readers and therefore accessible for people with

print disabilities. Ex. 1, Soforenko Decl. ¶ 9 & Ex. C; *VotingWorks Accessible Vote-By-Mail*,

VotingWorks, https://voting.works/avbm (last visited Aug. 7, 2020).  However, the

Commonwealth is only making the VotingWorks system available to military and overseas

voters and only for those voters in certain counties.

In sum, in order to cast a ballot under the Virginia Absentee Voting Program, non-

UOCAVA voters must be able to read a paper ballot in standard print, physically mark the ballot

---

[2] On August 5, 2020 the parties in *League of Women Voters of Virginia, et al. v. Virginia State Board of Elections*, filed a joint brief in support of a motion to approve a consent judgement to remove the witness requirement for signatures on absentee ballots because its enforcement during the COVID-19 pandemic "would impose a serious burden on the right to vote, particularly among the elderly, immunocompromised, and other at-risk populations. " No. 6:20-CV-00024, --- F. Supp. 3d ----, ECF. No. 96 at 1, (W.D. Va.) ("[T]he Consent Parties further agree that no eligible voter should have to choose between casting a ballot that will count and placing their own health at risk.").

[3] Defendants appear to be making the KNOWiNK system available only to overseas voters from select counties. Ex. 1, Declaration of Tracy Soforenko ("Soforenko Decl.") ¶¶ 9–10 & Ex. D.

choices, and fill in and sign the statement printed on the back of the envelope.  Even though

Defendants already have an alternative system that would accommodate Virginia citizens with

print disabilities, they have refused to make the myBalllot KNOWink system used by UOCAVA

voters available statewide to voters with print disabilities. *See* Ex. 2, Declaration of Sam Joehl

("Joehl Decl.") ¶ 4.d and Exhibit E thereto (Letter dated Jul. 29, 2020 from Keyanna Conner,

Ph.D., Office of the Governor); Ex. 1, Soforenko Decl. ¶ 11.

**B.    The COVID-19 Pandemic Has Magnified the Importance of Absentee Voting.**

The November 2020 election is being held in the middle of the global COVID-19

pandemic, making it critical that Virginia conduct its elections with careful attention to public

health guidelines, while at the same time safeguarding every person's right to vote. The

"Constitution does not permit a state to force" a person to choose between protecting not only

their "own health, but the health of those around them, and undertaking their fundamental

right—and, indeed, their civil duty—to vote in an election." *League of Women Voters of Va. v.*

*Va. State Bd. of Elections*, No. 6:20-CV-00024, --- F. Supp. 3d ----, 2020 WL 2158249, at *8

(W.D. Va. May 5, 2020).

The rapid spread of COVID-19 has created a global pandemic.[4] According to the New

England Journal of Medicine, "[a]symptomatic transmission of [COVID-19] is the Achilles' heel

of COVID-19 pandemic control."[5] COVID-19 spreads mainly from person-to-person through

close contact and through respiratory droplets when an infected person speaks, coughs, or

---

[4] Betsy McKay *et al*., *Coronavirus Declared Pandemic by World Health Organization*, Wall
Street Journal (Mar. 11, 2020), https://www.wsj.com/articles/u-s-coronavirus-cases-top-1-000-
11583917794.

[5] Monica Gandhi *et. al. Asymptomatic Transmission, the Achilles' Heel of Current Strategies to
Control COVID-19*, New England Journal of Med. (Apr. 24, 2020),
https://www.nejm.org/doi/full/10.1056/NEJMe2009758.

sneezes.[6] SARS-CoV-2 is also aerosolized, such that tiny droplets containing the virus remain in the air and can be inhaled by others who come into contact with that air, which is a vector of transmission.[7]  COVID-19 can cause severe consequences, including long-term illness and death. The reported U.S. death toll is over 144,000.[8] On Friday, August 7, 2020, Virginia recorded an all-time high of 2,015 new cases a day.[9] As of August 9, 2020, there are 100,086 confirmed and probable cases of COVID-19 in the state, 8,369 hospitalizations due to COVID-19 infection, and 2,326 deaths.[10]

---

[6] *How It Spreads*, Ctrs. For Disease Control & Prevention (hereinafter "CDC"), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last updated June 16, 2020).

[7] *See, e.g.,* Fears *et al*., Persistence of Severe Acute Respiratory Syndrome Coronavirus 2 in Aerosol Suspensions, Emerg Infect Dis. (2020), https://doi.org/10.3201/eid2609.201806; Lea Hamner *et al*., High SARS-CoV-2 Attack Rate Following Exposure at a Choir Practice—Skagit County, Washington, March 2020, Morbidity and Mortality Weekly Report Early Release (May 12, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e6.htm; Jianyun Lu *et al*., COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020, Emerg. Infect. Dis. (2020), https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article; see also Valentyn Stadnytskyi V *et al*., The Airborne Lifetime of Small Speech Droplets and Their Potential Importance in SARS-CoV-2 Transmission, 117 Proceedings of the Nat'l Acads. of Sci of the United States of Am. 11875, 11877 (2020), https://www.pnas.org/content/pnas/117/22/11875.full.pdf (concluding among other things that "normal speech generates airborne droplets that can remain suspended for tens of minutes or longer and are eminently capable of transmitting disease in confined spaces").

[8] Daily Updates of Totals by Week and State: Provisional Death Counts for Coronavirus Disease 2019 (COVID-19) tbl.1, CDC, https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm (last updated Aug. 7, 2020).

[9] *Key Measures*, Va. Dep't Health, https://www.vdh.virginia.gov/coronavirus/key-measures (last updated Aug. 7, 2020).

[10] *COVID-19 Daily Dashboard*, Va. Dep't Health, https://www.vdh.virginia.gov/coronavirus/covid-19-daily-dashboard (last updated Aug. 9, 2020). Because the VDH numbers only include persons who were in a hospital at the time of their positive test for COVID-19, these numbers undercount the number of persons in Virginia who have been hospitalized.  According to the Virginia Hospital and Healthcare Association reporting that as of August 10, 2020, there have been 12,961 people with COVID-19 who have been discharged from Virginia hospitals. https://www.vhha.com/communications/virginia-hospital-covid-19-data-dashboard/.

COVID-19 can infect any individual no matter their age.  However, certain people are at heightened risk of serious complications or death, including older adults, those with immune disorders, diabetes, chronic lung disease (including chronic obstructive pulmonary disease), asthma, or obesity.[11]

There is no vaccine against SARS-CoV-2.[12]  As a result, the only ways to limit its spread are self-isolation, social distancing, frequent handwashing, wearing a mask or face covering, and disinfecting surfaces. Each of these interventions is aimed at sterilization or keeping infected individuals far enough apart from other individuals so that they do not transmit the virus. On June 30, 2020, Governor Northam issued Executive Order 67, effective July 1, 2020 and continuing indefinitely, urging Virginians to "remain cautious—continue teleworking whenever possible, wash our hands frequently, do not touch our faces, and wear face coverings."[13]

Many public health experts warn that a further resurgence of cases in the fall and/or winter is inevitable, with Dr. Anthony Fauci, Director of the National Institutes of Allergy and Infectious Diseases, stating that "[w]e will have coronavirus in the fall. . . .I am convinced of that because of the degree of transmissibility that it has, the global nature."[14] As a recent report from the Center for Infectious Disease Research and Policy at the University of Minnesota found,

---

[11] *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Aug. 7, 2020) (hereinafter "*Medical Conditions*").

[12] *How to Protect Yourself and Others,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated July 31, 2020).

[13] *See* Va. Executive Order No. 2020-67, https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-67-and-Order-of-Public-Health-Emergency-Seven---Phase-Three-Easing-of-Certain-Temporary-Restrictions-Due-to-Novel-Coronavirus-(COVID-19).pdf.

[14] Savannah Behrmann, *'Convinced': Fauci Says There Will Be Coronavirus in the Fall After Trump Says 'It May Not Come Back'*, USA Today (Apr. 23, 2020), https://www.usatoday.com/story/news/politics/2020/04/22/coronavirus-dr-anthony-fauci-says-i-am-convinced-second-wave/3009131001.

"this outbreak will likely last 18 to 24 months" and "likely won't be halted until 60% to 70% of the population is immune."[15] COVID-19 will continue to pose an imminent and serious threat to Americans' health and safety until a reliable and widely accessible vaccine is available. It is highly unlikely that an effective vaccine will be available in time for the November 3, 2020 election.[16]

In light of these circumstances, both federal and state governments are urging voters to vote by absentee ballot to prevent gathering at the polls. The CDC is specifically urging voters to use alternatives to in-person voting.[17]  As Gov. Ralph Northam emphasized, "Virginians should never have to choose between casting a ballot and risking their health."[18] It is reasonably expected that significant numbers of voters will heed the Governor's advice and exercise the option to vote by absentee ballot in the November general election. One metric forecasting skyrocketing absentee turnout was Virginia's June 2020 Democratic Primary, where about 37%

---

[15] Kristine A. Moore, M.D., M.P.H., *et al.*, COVID-19: The CIDRAP Viewpoint, Part 1: The Future of the COVID-19 Pandemic: Lessons Learned from Pandemic Influenza, Ctr. for Infectious Disease Research & Policy, 3 (Apr. 30, 2020), https://www.cidrap.umn.edu/sites/default/files/public/downloads/cidrap-covid19-viewpoint-part1_0.pdf.

[16] COVID-19: Safely Getting Back to Work and Back to School: Hearing Before U.S. Senate Committee on Health, Education, Labor & Pension, 116th Congress at 32:06 (May 12, 2020) (Testimony of Dr. Anthony Fauci, M.D., Director, Nat. Inst. of Allergy and Infectious Diseases) *available at* https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12.

[17] *Coronavirus Disease 2019 (COVID-19) — Considerations for Election Polling Locations*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last updated June 22, 2020) (hereinafter "*Considerations for Election*").

[18] *Governor Northam Postpones Upcoming May Elections in Response to COVID-19/Virginians encouraged to vote absentee by mail,* https://www.governor.virginia.gov/newsroom/all-releases/2020/april/headline-856329-en.html (Apr. 24, 2020 release) (last visited Aug. 9, 2020).

of voters returned absentee ballots. By comparison, only approximately 8% of voters returned

absentee ballots in Virginia's June 2019 Democratic Primary.[19]

## C.     Individual Plaintiffs Must Overcome Significant Obstacles to Participate in the Virginia Absentee Voting Program.

As the CDC recognizes, "[m]ail-in voting can make it more difficult for voters with

disabilities to exercise their right to vote. Election officials should ensure that accessible voting

options are available and that these options are consistent with the recommendations for slowing

the spread of COVID-19." *Considerations for Election*, *supra* note 17. Because they are blind,

Carshena Gary, Lori Scharff, Regina Root, Naim Muawia Abu-El Hawa, and John Halverson

(together, "Individual Plaintiffs") face significant hardship if they intend to exercise their right to

a private, secret ballot. All are registered voters who intend to vote in future elections, including

in November 2020. Ex. 3, Declaration of Carshena Gary ("Gary Decl.) ¶ 7; Ex. 4, Declaration of

Lori Scharff ("Scharff Decl.") ¶ 7; Ex. 5, Declaration of Reginia Root ("Root Decl.") ¶ 9; Ex.6,

Declaration of Naim Muawia Abu-El Hawa ("Abu-El Hawa Decl.") ¶ 7; Ex. 7, Declaration of

John Halverson ("Halverson Decl.") ¶ 7.

Each would use an accessible absentee ballot if available. Ex. 3, Gary Decl. ¶¶ 13–14;

Ex. 4, Scharff Decl. ¶¶ 10, 13–14; Ex. 5, Root Decl. ¶ 16; Ex. 6, Abu-El Hawa Decl. ¶ 15; Ex. 7,

Halverson Decl. ¶ 12. However, none can cast an absentee ballot independently, as all other

Virginia voters may, using a paper ballot. Instead, they are forced to reveal their votes to friends

or family if they want to exercise the right to vote absentee. As Tracy Soforenko, President of

Plaintiff the National Federation of the Blind of Virginia ("NFBV") explains, the blind "do not

---

[19] Data accessed from https://apps.elections.svirginia.gov/SBE_CSV/ELECTIONS/
ELECTIONTURNOUT. Open the links for "Turnout-2020 June Democratic Primary.csv" and
"Turnout-2019 June Democratic Primary.csv." Percentages derived from the sum of
"absentee_ballots" (Column H) divided by the sum of "TotalVoteTurnout" (Column K).

want 'assistance' to vote. We want Virginia to respect our right to vote private and independently by making its system accessible." Ex. 1, Soforenko Decl. ¶ 7.

Ms. Gary, a member of the NFBV, has diabetes, asthma, and an autoimmune disorder, in addition to being blind. Ex. 3, Gary Decl. ¶¶ 4–5. She "consider[s] voting an honor" and intends to vote in the November 3 general election. *Id.* ¶ 7. However, Ms. Gary's health conditions put her at high risk of severe or fatal COVID-19 infection. *See Medical Conditions*, *supra* note 11. Ms. Gary does not live with someone who could assist her with her ballot and would have to subject herself to potential exposure to COVID-19 to vote, either in person or absentee. Ex. 3, Gary Decl. ¶¶ 11–12. To vote absentee as she intends, she must sacrifice her right to ensure that her ballot is private and marked correctly. Ex. 3, Gary Decl. ¶ 14.

Ms. Scharff, a member of Plaintiff the American Council of the Blind of Virginia ("ACB-VA"), has multiple sclerosis and is immunocompromised, in addition to being blind. Ex.4, Scharff Decl. ¶¶ 4–5. She is "proud to exercise [her] right as a citizen to be involved in the democratic process" and intends to vote in the November 3 general election. Ex. 4, Scharff Decl. ¶ 7. However, Ms. Scharff's health conditions put her at high risk of severe or fatal COVID-19 infection. *See Medical Conditions*, *supra* note 11. She has previously been deprived of her right to vote by a person seeking to "assist" her, when a poll-worker accidentally cast a ballot for her on the accessible ballot-marking device, and Ms. Scharff had no access to audio-feedback and did not know what candidate was selected. Ex. 4, Scharff Decl. ¶ 11. Ms. Scharff was forced to seek assistance to vote absentee for the Virginia 2020 primary election, because she could not risk traveling to the polls due to the pandemic. *Id.* ¶¶ 10, 12. She "never want[s] to have to rely on someone else to fill out [her] ballot correctly again." *Id.* ¶ 13.

Ms. Root, a member of the NFBV and ACB-VA, is a cancer survivor and has a brain tumor that affects her central nervous system, including swallowing and breathing, in addition to

having low vision. Ex. 5, Root Decl. ¶¶ 4–6. She "believe[s] strongly in [her] candidate and [is] determined to cast [her] vote this year." *Id.* ¶ 9. However, her doctor has warned her that she should take extra precautions to avoid COVID-19 infection. *Id.* ¶¶ 7, 13. Ms. Root takes this advice seriously. She and her husband avoid interacting with others—she has not even hugged her adult daughter since March 7. *Id.* ¶ 13. The only way for Ms. Root to vote privately, independently, and safely in the next election is to vote via an accessible absentee ballot. *See id.* ¶¶ 14–16.

Mr. Abu-El Hawa, a member of the NFBV, is immunocompromised in addition to being blind. Ex. 6, Abu-El Hawa ¶¶ 4–5. Mr. Abu-El Hawa "believe[s] that voting is the duty of every citizen in a democracy" and intends to vote in the November 3 general election. Ex. 6, Abu-El Hawa ¶ 7. However, Mr. Abu-El Hawa's health conditions put him at high risk of severe or fatal COVID-19 infection. *See Medical Conditions*, *supra* note 11. He also lives with family members who are high risk, and he does not intend to subject them to potential infection by voting in person. Ex. 6, Abu-El Hawa ¶¶ 2, 5, 10. For Mr. Abu-El Hawa, voting absentee with assistance is not an acceptable option. He would have to rely on family members with whom he has divergent political views. Ex. 6, Abu-El Hawa ¶ 12. He does not trust them to mark his ballot or to follow the procedural rules necessary to ensure his ballot is counted. *Id.* ¶¶ 12–13. The only way for Mr. Abu-El Hawa to be sure he can cast an effective vote this November is an accessible absentee ballot. *See id.* ¶15.

Mr. Halverson, a member of the NFBV, has diabetes, chronic obstructive pulmonary disease, and a history of severe respiratory infection, in addition to being blind. Ex. 7, Halverson Decl. ¶ 5. Voting is "extremely important" to him—he "believe[s] everyone who lives in a democracy should exercise their right to independently select our government," and he intends to vote in the November 3, 2020 general election. *Id.* ¶ 7. However, Mr. Halverson's health

conditions put him at high risk of severe or fatal COVID-19 infection. *See Medical Conditions, supra* note 11 . He does not intend to vote in person to avoid this risk. Ex. 7, Halverson Decl. ¶ 10. Like Ms. Scharff, he has been deprived of his right to vote in the past when attempting to vote with assistance. *Id.* ¶ 11. He intends to protect his right to vote independently and "hope[s] to never again have to reveal [his] vote to someone or rely on someone else to mark [his] ballot." *Id.* Mr. Halverson missed the most recent election because of his concerns about the pandemic. *Id.* ¶ 10. The only option available to Mr. Halverson that preserves his right to an independent, secret, and safe vote is accessible absentee voting. *See id.* ¶¶ 10, 12.

These burdens are not unique to the Individual Plaintiffs. They are common to blind individuals throughout Virginia. *See* Ex. 1, Soforenko Decl. ¶¶ 12–15; Ex. 2, Joehl, Decl. ¶¶ 7–10. By maintaining an inaccessible Absentee Voting Program when accessible options are available, Virginia needlessly risks the health and lives, and violates the rights, of is residents with disabilities.

## III.   LEGAL STANDARD

Plaintiffs seek a preliminary injunction to ensure that Virginia's Absentee Voting Program is accessible to people with print disabilities. A court may issue a preliminary injunction if it determines that: (1) the plaintiffs are likely to succeed on the merits; (2) the plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in the plaintiffs' favor, and (4) an injunction serves the public interest. *Winter v. Natural Res. Def. Council Inc*., 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Elec. Comm.*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Here, each factor decisively favors Plaintiffs.

## IV.  ARGUMENT

**A.  Plaintiffs Are Likely To Succeed on the Merits of Their ADA, Section 504, and State Law Claims.**

Plaintiffs are highly likely to succeed on the merits of their claims.[20] Individuals with disabilities are entitled to more than "merely the opportunity to vote at some time and in some way." *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 199 (2d Cir. 2014). Plaintiffs are entitled to nothing short of an equal opportunity to "participate in [and] benefit from" the Virginia Absentee Voting Program, 28 C.F.R. § 35.130(b)(1)(ii), and access to equally effective communication to and from their government, including via the ballot, *id.* § 35.160(a)(1);[21] *see also* 29 U.S.C. § 794(a). Nondisabled individuals who want to vote absentee can independently complete their ballots, preserving their privacy and control over their vote. Voters with print disabilities who want to vote absentee cannot. Requiring Plaintiffs to obtain assistance to vote absentee "at best provides these individuals with an inferior voting experience 'not equal to that afforded others' . . . [because] [b]lind and visually impaired voters are forced to reveal a political opinion that others are not required to disclose." *Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1232 (N.D. Cal. 2013) (quoting 28 C.F.R. § 35.130(b)(1)(ii)).

To prove their claims, Plaintiffs must establish that: (1) they have disabilities; (2) they are otherwise qualified to receive the benefits of the public service, program, or activity at issue; and

---

[20] The Virginians with Disabilities Act standards for liability follow the standards established in the federal statutes Rehabilitation Act of 1973 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq. Tyndall v. National Educ. Ctrs., Inc*., 31 F.3d 209 (4th Cir. 1994). Because there is no relevant difference in the elements to prove each claim, Plaintiffs' claims under the ADA, Section 504, and the Virginia Code can be considered in tandem. *See, e.g. Seremeth v. Bd. of Cty. Comm'rs Frederick Cty*., 673 F.3d 333, 336 n.1. (4th Cir. 2012) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." (citation omitted)).

[21] The Department of Justice's ADA regulation receives *Chevron* deference. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016).

(3) they were excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disabilities. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir. 1999); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 & n. 9 (4th Cir. 1995).  They meet each element.[22]

### 1.    Plaintiffs are individuals with disabilities.

A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102; 28 C.F.R. § 35.108(a)(1)(i); *accord* Va. Code § 51.5-40.1. Physical impairments include "[a]ny physiological or condition . . . affecting . . . special sense organs," and major life activities include "seeing," as well as "the functions of the immune system," among others." *Id.* § 35.108(b)(1)(i), (c)(1)(i)–(ii). Because they are blind, the Individual Plaintiffs and members of NFBV and ACB-VA are disabled within the meaning of the ADA, Section 504, and the Virginia Code. *See supra* Part II.C. Several Individual Plaintiffs and many members of NFBV and ACB-VA have other conditions that are considered disabilities, including those that compromise their immunity and/or render them more susceptible to serious COVID-19 infection. *Id.*

---

[22] In addition, to prove a violation of Section 504, Plaintiffs must show that Defendants receive federal funds. *See* 29 U.S.C. § 794(a). The Virginia Department of Elections receives federal financial assistance in many forms, including, direct grants of assistance to develop, certify, and maintain voting, such as the $9.5 million for COVID-19 related expenses through the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020) ("CARES Act"), and the $10.2 million in Help America Vote Act.  *See* 2020 Cares Act Grants, U.S. Elections Assistance Comm'n, https://www.eac.gov/payments-and-grants/2020-cares-act-grants (last visited July 22, 2020); https://www.eac.gov/sites/default/files/paymentgrants/Funding_Chart_ES.pdf (last visited July 26, 2020). Upon information and belief, the Virginia Board of Elections likewise receives federal financial assistance in many forms, including, direct grants to develop, certify, and maintain Virginia's voting program.

### 2.     Plaintiffs are otherwise qualified to participate in Virginia's Absentee Voting Program.

Absentee voting is a program or service within the meaning of disability rights law. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503–05 (4th Cir. 2016). Consequently, absentee voting and absentee registration, not only "voting in its entirety," must be made accessible. *Id.* The Individual Plaintiffs and many NFBV and ACB-VA members are registered to vote in Virginia. *See supra* Part II.C. As Virginia now allows all voters to vote absentee regardless of the reasons, *see supra* Part II.A, Plaintiffs and their members are "qualified" to receive the benefits of absentee voting in the November 3, 2020 general election.

### 3.     Defendants' Absentee Voting Program discriminates against Plaintiffs because of their disabilities.

Title II covers a broad spectrum of unlawful "discrimination" in government "services, programs, [and] activities." 42 U.S.C. § 12132. Disability discrimination includes "[a]fford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others" and "provid[ing] a qualified individual with a disability an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result[] [or] gain the same benefit . . . as that provided to others." 28 C.F.R. § 35.130(b)(1)(ii)–(iii); *accord* 28 C.F.R. § 41.51(b)(1)(ii)–(iii) (Section 504 regulation). The state also discriminates when it fails "to ensure that communications with . . . participants [and] members of the public . . . with disabilities are as effective as communications with others." *Id.* § 35.160(a)(1). Equally effective communication requires public entities to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1). The state must "give primary consideration to the requests of individuals with disabilities" when selecting auxiliary aids and

services," and auxiliary aids and services must "protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

Virginia's Absentee Voting Program excludes voters with print disabilities, including Plaintiffs, from voting privately and independently, a textbook violation of Defendants' obligation to ensure equally effective communication. The Virginia Absentee Voting Program requires voters to fill out a paper ballot using a pen or marker, sign the inner envelope, and return the ballot by mail. Thus, in order to cast an absentee vote, the voter must read the ballot in standard print and physically write and/or fill in the ballot choices. Unlike absentee voters without disabilities, absentee voters with print disabilities are forced to seek assistance from other persons. Forcing people with disabilities "to rely on the honesty and carefulness of sighted individuals" violates federal law. *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1270 (D.C. Cir. 2008). As the courts recognize, "The right to vote should not be contingent on the happenstance that others are available to help." *Disabled in Action*, 752 F.3d at 200; *Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1239 (N.D. Cal. 2013).

Under similar circumstances of the COVID-19 pandemic, the Fourth Circuit had "little trouble concluding . . . that Maryland's absentee voting program does not provide disabled individuals an 'opportunity to participate . . . equal to that afforded others." *Lamone*, 813 F.3d at 506 (quoting 28 C.F.R. § 35.130(b)(1)(ii)). As the Court explained, even if there were no "standalone right to vote privately and independently without assistance," having provided such a right to sighted individuals, the state could not deny it to the blind. *Id.* The Fourth Circuit recognized that "[e]nsuring that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others" protects a primary purpose of the ADA: to "ensure that those individuals are never relegated to a position of political powerlessness." *Id.* at 507. The facts in *Lamone* are indistinguishable: Virginia denies voters with disabilities the right to vote

absentee without assistance when the technology that would allow those voters an independent and private absentee vote is available. It is settled law that doing so violates the ADA.

Under the current circumstances, Defendants deny Plaintiffs and Organizational Plaintiffs' members an equal opportunity to benefit from a secret vote for the additional reason that they force Plaintiffs to compromise their safety and health in order to access that right. Plaintiffs must forgo social distancing to the seek assistance of third parties or to travel to polling places to vote independently. *See supra* Part II.C. Individuals without disabilities need not take such risks when exercising their right to a secret ballot because they can vote absentee.

Public entities must "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities" equally effective communication and equal opportunity. 28 C.F.R. § 35.160(b)(1). Cost-effective remote access vote by mail ("RAVBM") systems exist, have been certified secure by several states, and are in wide use. Ex. 8, Declaration of Juan Gilbert ("Gilbert Decl.") ¶¶ 11, 14. Indeed, Virginia already has secured an accessible email ballot delivery system for military and overseas citizens pursuant to its obligation under UOCAVA, 52 U.S.C. § 20301 *et seq. See supra* Part II.A. A system already in use that has been found to be "reasonably secure and reasonably accessible" is clearly an appropriate auxiliary aid or service. *Lamone*, 813 F.3d at 508. An RAVBM system also is necessary. *See* 28 C.F.R. § 35.160(b)(1). Without an accessible electronic method of reading and marking their ballots, Plaintiffs are denied the privacy and independence in voting absentee to which they are entitled. *See* Ex. 1, Soforenko Decl. ¶¶ 6–11; Ex. 2, Joehl, Decl. ¶ 4.

Finally, Defendants are obligated to give "primary consideration" to Plaintiffs' request to use an RAVBM tool. 28 C.F.R. § 35.160(b)(2). Defendants "must honor [Plaintiffs'] choice, unless [Defendants] can demonstrate that another equally effective means of communication is available or that the aid or service requested would fundamentally alter the nature of the

program, service, or activity or would result in undue financial and administrative burdens."
Dep't of Justice, ADA Update: A Primer for State and Local Governments 8 (2015),
https://www.ada.gov/regs2010/titleII_2010/titleII_primer.pdf. Defendants cannot meet that
burden.[23]

### 4. Expanding its RAVBM System to Voters with Print Disabilities Statewide Would Not Pose an Undue Burden or Fundamental Alteration to the Commonwealth

Defendants may only refuse to make an accessible absentee voting system available to
Plaintiffs if they can prove that doing so would either fundamentally alter the nature of the
absentee voting program or, in the case of providing an auxiliary aid or service, that it would
pose an undue financial or administrative burden. 28 C.F.R. § 35.130(b)(7); 28 C.F.R. § 35.164.

"Fundamental alteration" however, is an affirmative defense under the ADA, and its
analysis is a fact-intensive inquiry where defendants bear the burden of proving that the
requested modification would be a fundamental alteration to the program. 28 C.F.R. §
35.130(b)(7). Where an ADA plaintiff is asking for the waiver of a generally applicable rule, the
court's "focus should be on whether waiver of the rule in the particular case would be so at odds
with the purposes behind the rule that it would be a fundamental and unreasonable change."
*Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003).

In similar cases, courts already have explained that implementing reasonable
modifications similar to modifications proposed by Plaintiffs here do not fundamentally alter
voting systems. *Hindel v. Husted*, 875 F.3d 344, 349 (6th Cir. 2017); *Lamone*, 813 F.3d at 509.
As the Fourth Circuit noted in *Lamone*, the use of the online ballot marking tool is reasonably

---

[23] "The decision that compliance would result in such alteration or burdens must be made by the
head of the public entity or his or her designee after considering all resources available for use in
the funding and operation of the service, program, or activity and must be accompanied by a
written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164. There is no
evidence of such a determination having beeen made here.

secure, safeguards voters with print disabilities' privacy, and has been used in actual elections without apparent incident, rendering substantive concerns about the use of the online ballot marking unreasonable. *Id*. at 509-10.

Here, there is no fundamental alternation or undue burden. First, using an RAVBM for electronic ballot delivery and marking is secure and effective. Ex. 8, Gilbert Decl. ¶¶ 12–20. Despite what Defendants have cited in their communications with Plaintiffs. *See* Ex. 1, Soforenko Decl. ¶ 11; Ex. 2, Joehl, Decl. ¶ 4. Virginia law clearly does not prohibit electronic delivery and marking of absentee ballots. Indeed, Virginia, using the myBallot KNOWiNK system, is electronically delivering absentee ballots to certain UOCAVA voters. Defendants' use of this system for UOCAVA voters undermines any claim that extending this option to voters with disabilities would fundamentally alter their Absentee Voting Program. Under *Lamone*, a "reasonably secure" tool that "has been used in actual elections without apparent incident" is not a fundamental alteration. 813 F.3d at 509.

Second, Defendants are unlikely to show that expanding the use of the RAVBM tool to individuals with print disabilities poses an undue financial or administrative burden. The voting technology is readily available and affordable. Ex. 8, Gilbert Decl. ¶ 11 (Prime III is open source and therefore free). VotingWorks offers Accessible Vote By Mail technology that is secure, affordable and easily implemented.[24] And of course, Defendants are already implementing the RAVBM system for some constituents, and it is reasonable for them to expand it.

Finally, even if Virginia law did prohibit, as opposed to merely not specifically authorizing, electronic ballot delivery and marking for voters with disabilities, under the Supremacy Clause of the Constitution, the ADA would preempt such contrary state law. Title II

---

[24] VotingWorks. *VotingWords Accessible Vote-By-Mail*, https://voting.works/avbm/ (last visited August 10, 2020).

is a valid exercise of Congress's power under the Fourteenth Amendment; "as such, it trumps state regulations that conflict with its requirements." *Lamone*, 813 F.3d at 508; *see, e.g.*, *Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013). State law must yield when it conflicts, either directly or by implication, with federal law. *See Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 861 (4th Cir. 1998). Such a conflict arises when "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of the relevant federal law." *Nat'l Home Equity Mortgage Assoc. v. Face*, 239 F.3d 633, 2001 U.S. App. LEXIS 1735, 2001 WL 101454, at *2 (4th Cir. 2001) (citation omitted).  Virginia cannot use state law to avoid its obligations under federal disability rights law. For this reason, too, Plaintiffs are likely to prevail on the merits of their claims.

## B.    A Preliminary Injunction Is Necessary to Prevent Irreparable Harm to Plaintiffs.

Irreparable harm may be presumed when a defendant has violated a civil rights statute. Courts have recognized that the Americans with Disabilities Act, 42 U.S.C.S. § 12101 *et seq.*, is a federal civil rights statute enacted to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. *Jacques v. Clean-Up Grp.*, 96 F.3d 506, 509 (1st Cir. 1996); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation."); *United States v. Cent. Carolina Bank & Trust Co.*, 431 F.2d 972, 975 (4th Cir. 1970) ("[T]he forbidden discrimination itself constitutes irreparable injury"); *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 532 (W.D. Va. 2018) ("Where Plaintiffs' constitutional rights are being violated, there is a presumption of irreparable harm"). The presumption of irreparable

harm applies in particular when that statute explicitly provides for injunctive relief, as the ADA does.[25]

Even if irreparable injury were not presumed, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (hereinafter "*LWVNC*") (collecting cases). This is so because "the right of suffrage is a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 534, 11 L. Ed. 2d 481 (1964).

Infringement on voting rights causes irrecoverable injury: "once the election occurs, there can be no do-over and no redress," so the injury to "voters is real and completely irreparable if nothing is done to enjoin [the challenged] law." *LWVNC*, 769 F.3d at 247; *see also Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016) (a voting rights case is not one where "failing to grant the requested relief would be a mere inconvenience to Plaintiff and its members"—an election "isn't golf: there are no mulligans.").

The secret ballot is integral to the right to vote. It is an important defense against "voter intimidation and election fraud" and "necessary to cure electoral abuses." *Burson v. Freeman*,

---

[25] 42 U.S.C. § 12188(a)(2) ("Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."); *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992); *Burlington N.R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074 (9th Cir. 1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief[.]"); *EEOC v. Cosmair, Inc.*, 821 F.2d 1085 (5th Cir. 1986) (holding, in an the Age Discrimination in Employment Act case, that "when an injunction is expressly authorized by statute and the statutory conditions are satisfied, the movant need not establish specific irreparable injury to obtain a preliminary injunction.").

504 U.S. 191, 206–07 (1992). Plaintiffs and their members have good reason to fear such consequences—malicious or accidental—if they are forced to rely on others to mark their ballots. Ex.6, Abu-El Hawa Decl. ¶¶ 12–13; Ex. 7, Halverson Decl. ¶ 11; Ex. 1, Soforenko Decl. ¶ 15.

The Commonwealth forces Plaintiffs, because of their disabilities, to vote in person. In doing so, they must endanger their health and the health of their loved ones. *See supra* Part II.C. When faced with this Hobson's Choice, one Plaintiff determined he could not vote at all. Ex. 7, Halverson Decl. ¶ 10. Disenfranchisement certainly causes irreparable harm, and of course, so can contracting coronavirus:  there "can be no injury more irreparable" than "serious lasting illness or death." *Thakker v. Doll*, No. 1:20-CV-480, --- F. Supp. 3d ---. 2020 WL 1671563, at *4 (M.D. Pa. Mar. 31, 2020); *see also Perez-Perez v. Adducci*, No. 20-10833, --- F. Supp. 3d ---, 2020 WL 2305276, at *8 (E.D. Mich. May 9, 2020) (holding "unnecessary exposure to COVID-19" by forcing voters to choose between the right to vote and their health "provides a basis to find that [Plaintiffs] will suffer irreparable injury"). A preliminary injunction provides the only effective means of protecting Plaintiffs and many other Virginians' rights to vote in the November general election without asking them to place their health at serious risk.

## C.     The Balance of Hardships Is In Plaintiffs' Favor.

In considering a preliminary injunction, a court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Steves and Sons, Inc. v. JELD-WEN, Inc*., 3:20-CV-00098, 2020 WL 1844791 at *25 (E.D. Va. Apr. 10, 2020) (quoting *Winter*, 555 U.S. at 24 (2008)).

Here, the balance of equities tilts heavily in favor of Plaintiffs. Without access to accessible absentee voting, Plaintiffs will be excluded from voting unless they sacrifice the privacy of their ballots and/or risk contracting COVID-19. Virginia gains no benefit from such a system: the state (as well as the federal government) has encouraged voters to maintain social

distancing and vote absentee. *See supra* Part. II.B. Defendants will suffer minimal harm if a preliminary injunction is granted. Accessible and secure absentee voting technology is readily available and affordable. Ex. 8, Gilbert Decl. ¶ 11 (Prime III is open source and therefore free), and the Commonwealth already is implementing it for some voters. Accordingly, the balance of equities heavily favors granting Plaintiffs a preliminary injunction.

## D.   Injunctive Relief Will Service the Public Interest.

The right to vote privately and independently is the cornerstone of the democratic process. Accordingly, the public interest includes "exercising the 'fundamental political right' to vote [and] . . . favors permitting as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012); *see Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, 584 F. Supp. 2d 766, 796 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th Cir. 2010) (finding that an injunction serves the public interest where it would "further[] the exercise and protection of [a] constitutional right"). It weighs heavily in favor of the "right to vote freely." *Perry v. Judd*, 840 F. Supp. 2d 945, 960 (E.D. Va. 2018). "Any restrictions on that right strike at the heart of representative government." *Harman v. Forseenius*, 380 U.S. 528, 537 (1965).

Congress made clear in enacting the ADA that the public interest lies in the eradication of discrimination against persons with disabilities, declaring that the ADA's purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. § 12101(b)(1)).

As in *Lamone*, "[g]ranting injunctive relief in this case promotes the right to vote, is consistent with the anti-discrimination mandate of the ADA and Section 504, and thus serves the public interest." *Nat'l Fed'n of the Blind, Inc. v. Lamone*, No. CIV.A. RDB-14-1631, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *aff'd* 813 F.3d 494.

## V.   **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter a

preliminary injunction directing Defendants to implement throughout the Commonwealth of

Virginia a remote accessible vote-by-mail system to enable voters with disabilities to cast their

ballots in the upcoming general election, and all subsequent elections in Virginia, on equal terms

with other Virginia voters.

Respectfully submitted,

Dated: August 10, 2020

BY: /s/ Steven M. Traubert
Steven M. Traubert, VSB#41128
Zachary S. Devore, VSB#65401
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, VA 23230
Phone: (804) 225-2042
Fax: (804) 662-7431
Steven.Trauber@dlcv.org
Zachary.devore@dlcv.org

Eve L. Hill (*pro hac vice*)
Abigail Graber (*pro hac vice*)
Brown Goldstein & Levy
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
agraber@browngold.com

Steven P. Hollman (*pro hac vice*)
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
Phone: (202) 747-1941
Fax: (202) 747-3912
shollman@sheppardmullin.com

Kaitlin Banner (*pro hac vice*)
Margaret Hart (*pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
margaret_hart@washlaw.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10 day of August, 2020, I served a copy of the

foregoing Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction and the

accompanying exhibits and proposed Order on Counsel for Defendants via the Court's ECF

filing system, with a copy by e-mail, in accordance with Rule 5(b)(2)(E) of the Federal Rules of

Civil Procedure.

 /s/ Steven M. Traubert
Steven M. Traubert, VSB#41128
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, VA 23230
Phone: (804) 225-2042
Fax: (804) 662-7431
Steven.Trauber@dlcv.org

*Counsel for Plaintiffs*
