IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| CARSHENA GARY, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>VIRGINIA DEPARTMENT OF ELECTIONS, *et al.*,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:20-cv-00860-CMH-TCB<br>)<br>)<br>)<br>)<br>)<br>) |

**CONSENT JUDGMENT AND DECREE**

 1. Whereas Virginia Code §§ 24.2-706 and 24.2-707 require that voters completing an absentee ballot must open, mark, and refold their ballot in the presence of a witness, and then have the witness sign their ballot envelope.

 2. Whereas Virginia Code § 24.2-706(D) only permits absentee ballots to be electronically transmitted to "covered voters," as defined in Virginia Code § 24.2-452(1).

 3. Whereas any physically disabled voter may request and then shall be handed a printed ballot by an officer of election outside the polling place but within 150 feet of the entrance to the polling place. Va. Code § 24.2-649(A).

 4. Whereas any voter who requires assistance to vote by reason of physical disability or inability to read or write may, if she so requests, be assisted in voting. If the voter is blind, she may designate an officer of election or any other person to assist. Va. Code § 24.2-649(B).

 5. Whereas the prohibition on electronically transmitting ballots to print disabled

voters necessitates that any print disabled voter who wishes to vote an absentee ballot will need to either invite another person into their home to assist the voter in completing a paper ballot or travel outside their home to vote in person utilizing ballot marking tools at absentee voting locations or polling places. If the voter wishes to vote a paper absentee ballot, the individual must have another person assist the voter in filling out their ballot, closing and signing the envelope, and finally exchanging the envelope with the witness to obtain the witness's signature.

6. Whereas on July 27, 2020, Plaintiffs Carshena Gary, Lori Scharff, Regina Root, Naim Muawia Abu-El Hawa, John Halverson, the National Federation of the Blind of Virginia, and the American Council of the Blind of Virginia filed a complaint against the Virginia Department Of Elections, Christopher Piper, Commissioner of the Virginia Department of Elections, in his official capacity, the Virginia Board Of Elections, Robert H. Brink, Chair of the Virginia Board of Elections, in his official capacity, John O' Bannon, Vice Chair the Virginia Board of Elections, in his official capacity, and Jamilah D. LeCruise, Secretary of the Virginia Board of Elections, in her official capacity (collectively Defendants), challenging Virginia's system of absentee voting for individuals with print disabilities, particularly in light of the COVID-19 pandemic. ECF No. 1 at 1.

7. Among other relief requested, the Complaint seeks a court order requiring Defendants to offer a private and independent method of absentee voting that is accessible for Plaintiffs and others with print disabilities in time for use by voters in the November 3, 2020 election and in all future elections. ECF No. 1 at ¶ 169.

8. Whereas on August 28, 2020, the Court granted a partial consent decree to require Defendants to, by September 18, 2020, implement an absentee ballot program accessible to all print disabled voters for the November 3, 2020 election, including a remote accessible vote-by

mail tool that provides for electronic delivery and marking of absentee ballots, to issue guidance to localities requiring those localities to make that technology available to print disabled voters, and to inform the public of the availability of the accessible absentee ballot program. ECF No. 39.

9. Whereas, pursuant to Va. Code § 24.2-612, absentee voting must be available 45 days prior to any state election.

10. Whereas, in light of the importance of ensuring every qualified voter may vote privately and independently, Plaintiffs and Defendants (collectively, the Consent Parties) agree that an expeditious resolution of this matter for the Primary Election, in the manner encompassed by the terms of this Consent Decree, is in the best interests of the health, safety, and constitutional rights of the citizens of the Commonwealth of Virginia, and therefore in the public interest.

11. Whereas on March 18, 2021, Chapter 255 of the Acts of Assembly was approved, requiring the Department of Elections not later than July 1, 2021 to make available to all localities a tool to allow voters with a visual impairment or print disability to electronically and accessibly receive and mark absentee ballots using screen reader assistive technology.[1]

12. Whereas the Consent Parties agree that, beginning with the June 2021 Primary Election:

    a. Not later 45 days before the June 2021 Primary Election, Defendants will make available to all localities a tool that will allow print disabled voters to electronically receive and mark absentee ballots using screen reader assistive technology such as

---

[1] Acts of Assembly, Chap. 255, https://lis.virginia.gov/cgi-bin/legp604.exe?212+ful+CHAP0255+pdf.

3

MyBallot (the "Ballot Marking Tool"). If, despite their best efforts, Defendants are unable to implement the Ballot Marking Tool by April 23, 2021 for the June 2021 Primary Election, Defendants shall implement it as soon thereafter as practicable but in no event later than April 30, 2021.

    b. Defendants shall issue updated guidance to inform general registrars that if on the Virginia Vote by Mail Application Form a voter marks the box at 7d ("I need assistance completing my ballot due to a disability, blindness, or inability to read or write."), the general registrar shall:

        i. Contact the voter via mail, phone, or email to inquire as to whether the voter has a print disability.

        ii. If the voter affirms that they have a print disability, the general registrar shall electronically make available the Ballot Marking Tool and accessible electronic instructions for completion and return of the ballot, to the voter if the voter so elects.

        iii. The registrar shall also send the voter a ballot return envelope (Envelope B), enclosed in a larger envelope (Envelope A). The registrar shall place a tactile marking on Envelope A (e.g., hole punch, a corner cut, or a tactile sticker) in order to identify the envelope as Envelope A to the voter.

        iv. The registrar shall not reject ballots from print disabled voters on the basis of the position of the voter's signature or address on Envelope B if the voter's signature or address is anywhere on the envelope.

        v. The registrar shall not reject ballots from print disabled voters because they are completed using the Ballot Marking Tool and printed on regular

4

paper.

      c. Defendants shall provide instructions to all localities that the localities must make the Ballot Marking Tool available to all print disabled voters.

      d. Defendants shall provide instructions with each paper absentee ballot sent to voters that, if the voter is print disabled, the voter may contact the general registrar to void that paper absentee ballot and vote instead using the Ballot Marking Tool.

      e. Defendants shall take reasonable steps to provide information to the public regarding the Ballot Marking Tool and how to contact the Ombudsman designated pursuant to paragraph 12(g), including issuing a press release and posting information on the Department of Elections website and social media pages 45 days in advance of the June 2021 Primary Election.

      f. Defendants shall take reasonable steps to provide information to the public regarding the fact that, if a voter with a print disability has already received a paper absentee ballot that has not been cast, the voter may contact their general registrar to cancel that paper absentee ballot and request the use of the Ballot Marking Tool.

      g. Designate a qualified employee of the Department of Elections to serve as an Ombudsman who voters with print disabilities and election officials can contact to resolve issues encountered when using the RAVBM. Defendants shall inform Plaintiffs, through counsel, of the identity, qualifications and contact information of the Ombudsman not later than April 23, 2021.

    13. The Consent Parties agree that neither the entry of this Consent Decree, nor anything contained herein, is or shall be deemed an admission of liability by the Defendants as to any of the Plaintiffs' claims made, or issues raised, in the Complaint (ECF No. 1). Defendants

expressly deny any such claims or issues. This Agreement rather evidences the mutual desire of the Consent Parties to fully resolve any and all actual and potential controversies arising out of or relating to the Lawsuit.

14. Whereas the Court finds that it has subject matter jurisdiction over the Consent Parties and that the Consent Judgment and Decree is fair, adequate, and reasonable, and not illegal, a product of collusion, or against the public interest because such Agreement preserves the constitutional right to vote of Plaintiffs and other Virginia voters while promoting public health during a pandemic and does so without harming the integrity of Virginia's elections. The Agreement also gives appropriate weight to Defendants' expertise and public interest responsibility in the area of election administration.

15. Whereas Plaintiffs made a sufficiently strong showing on the merits of the claim, as shown in their complaint and motion for preliminary injunction, to further support the fairness, adequacy, and reasonableness of this Consent Judgment and Decree.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED FOR THE REASONS STATED ABOVE IN PARAGRAPHS 1-15:**

1. That for the June 8, 2021 Primary Election:

    a. Not later than 45 days prior to the June Primary Election, Defendants will make available to all localities a tool that will allow print disabled voters to electronically and accessibly receive and mark absentee ballots using screen reader assistive technology (the Ballot Marking Tool). If, despite their best efforts, Defendants are unable to implement the Ballot Marking Tool described herein 45 days prior to the June 2021 Primary Election, Defendants

    shall implement it as soon thereafter as practicable but in no event later than April 30, 2021.

b. Defendants shall issue updated guidance to inform general registrars that if a voter in applying for an absentee ballot, on or after the date of the entry of this consent decree, marks that the voter will require assistance in completing their absentee ballot, the general registrar shall contact the voter via mail, phone, or email to inquire as to whether the voter has a print disability. If the voter affirms that they have a print disability, the general registrar shall make available the Ballot Marking Tool and instructions to the voter if the voter so elects. The registrar shall also send the voter a ballot return envelope (Envelope B), enclosed in a larger envelope (Envelope A). Defendants shall provide instructions to all localities that the localities must make the Ballot Marking Tool available to all print disabled voters and must not reject ballots from voters with print disabilities based on the position of the voter's signature or address on the ballot return envelope or based on the fact that the ballot is printed on regular paper. Defendants' instructions must also inform localities that the registrar must place a tactile marking on Envelope A (e.g., hole punch, a corner cut, or a tactile sticker) in order to identify the envelope as Envelope A to the voter.

c. Defendants shall provide instructions with each paper absentee ballot sent to voters that, if the voter is print disabled, the voter may contact the general registrar to void that paper absentee ballot and vote instead using the Ballot Marking Tool.

    d. Defendants shall take reasonable steps to provide information to the public regarding the Ballot Marking Tool, including issuing a press release and posting information on the Department of Elections website and social media pages at least 45 days prior to the election and periodically during the early voting period.

    e. Defendants shall take reasonable steps to provide information to the public regarding the fact that, if a voter has a print disability and has already received a paper absentee ballot that has not been cast, the voter may contact their general registrar to cancel that paper absentee ballot and request the use of the Ballot Marking Tool.

    f. Within 30 days after the June 2021 Primary Election, Defendants will inform Plaintiffs of the number of individuals who elected to vote using the Ballot Marking Tool and summaries of any complaints or feedback received by Defendants about the Ballot Marking Tool.

    g. Designate, not later than April 23, 2021, a qualified employee of the Department of Elections to serve as an Ombudsman who voters with print disabilities and election officials can contact to resolve issues encountered when using the RAVBM. Defendants shall inform Plaintiffs, through counsel, of the identity, qualifications and contact information of the Ombudsman.

2. **Term.** The term of this Decree shall be through July 8, 2021.

3. **Attorney's Fees and Costs.** Defendants shall pay $150,000 for Plaintiffs' attorneys fees and costs. Payment will be sent to Plaintiffs' attorneys at the following address:
    Steven P. Hollman

SHEPPARD MULLIN RICHTER & HAMPTON, LLP

2099 Pennsylvania Avenue, NW

Washington, DC 20006-6801

shollman@sheppardmullin.com

4. **Release.** For and in consideration of the payment described above and the mutual covenants herein, and with the intent of binding themselves, their legal representatives, their assigns, their heirs, and their agents, Plaintiffs fully release, covenant not to sue, and discharge. Defendants (in both their official and individual capacities, and including, without limitation, any and all officials, employees, insurers, attorneys, and/or agents of any entity named as a defendant herein) from any and all claims, liabilities, demands, grievances, lawsuits, or charges of any kind whatsoever, known or unknown, accrued and/or unaccrued, that may exist as of the date of entry of this Decree, in law, equity or otherwise, including, without limitation, those arising out of or relating to the Lawsuit, whether specifically embodied in the Lawsuit or not, including, but not limited to, any claims for damages, injunctive relief, costs and/or attorney's fees. This unconditional release includes, but is not limited to, any claim or liability arising under any federal or state law or constitution, under contract or in tort and/or all claims and liabilities which has been asserted or could have been asserted by Plaintiffs. Plaintiffs expressly acknowledge that this Decree extinguishes all claims and liabilities, and any conceivable claims and liabilities, against the released parties that exist as of the date of entry of this Decree. The consideration provided to Plaintiffs in this Agreement shall be the sole relief provided to them for the claims that they have released herein and Plaintiffs will not

be entitled to recover, and expressly agree to waive, any additional monetary amounts, fees, or other recovery against the Defendants in connection with any claims they have released herein. Additionally, Plaintiffs agree that they will not seek any fees or costs after this Decree is entered based on the monitoring thereof.

5. **Breach**. The Parties agree that failure to abide by any of the terms of this Decree shall give rise to a claim for breach and that the releases contained herein shall not bar such a claim or any relief sought as a result thereof.

**SO ORDERED** this 15th day of April, 2021.

*Claude M. Hilton*

Hon. Claude M. Hilton

United States District Judge